Argued and submitted November 21, 2022; conviction for second-degree assault reversed and remanded, remanded for resentencing, otherwise affirmed March 22, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SUNNY SKY STONE,
*Defendant-Appellant.*

Linn County Circuit Court
20CR19019; A174894

527 P3d 800

Defendant was charged with multiple crimes based on an incident with his intimate partner, N. Defendant admitted to choking N with an electrical cord but claimed that she had consented to his conduct for sexual reasons. During jury deliberations, in response to a jury question, the trial court instructed the jury that consent is not a "portion or element" of the crimes of strangulation and second-degree assault. The jury subsequently found defendant guilty of strangulation, second-degree assault, and unlawful use of a weapon (UUW). On appeal, defendant assigns error to the court's answer to the consent question as to strangulation and assault, respectively. He also claims that the court committed plain error by not instructing the jury on the requisite mental states for the "deadly or dangerous weapon" element of assault, the "dangerous or deadly weapon" element of UUW, and the "physical injury" element of assault. *Held*: The trial court plainly erred by not instructing the jury on the requisite mental state for the "physical injury" element of assault, and the error did not meet the standard for harmlessness. Defendant's conviction for second-degree assault was therefore reversed and remanded. However, the UUW conviction was affirmed, because the instructional error relevant to that count was harmless, and the strangulation count was affirmed, because the court did not err in answering the jury's question as it did with respect to the crime of strangulation.

Conviction for second-degree assault reversed and remanded; remanded for resentencing; otherwise affirmed.

Michael B. Wynhausen, Judge.

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Lagesen, Chief Judge, and Jacquot, Judge.*

AOYAGI, P. J.

Conviction for second-degree assault reversed and remanded; remanded for resentencing; otherwise affirmed.

_____
    * Jacquot, J., *vice* James, J. pro tempore.

**AOYAGI, P. J.**

Defendant was convicted of multiple crimes based on an incident in March 2020 with his intimate partner, N. Defendant admitted to choking N with an electrical cord, moving her to another room, and handcuffing her inside a closet, but he claimed that she had consented to his conduct for sexual reasons. During jury deliberations, in response to a jury question, the court instructed the jury that consent is not "a portion or element of" the crimes of strangulation and second-degree assault. The jury subsequently found defendant guilty of strangulation, second-degree assault, and unlawful use of a weapon (UUW), while finding him not guilty of second-degree kidnapping. On appeal, defendant raises five assignments of error, challenging (1) the court's answer to the consent question as to strangulation, (2) the court's answer to the consent question as to assault, (3) the lack of a jury instruction on the mental state for the "deadly or dangerous weapon" element of assault, (4) the lack of a jury instruction on the mental state for the "dangerous or deadly weapon" element of UUW, and (5) the lack of a jury instruction on the mental state for the "physical injury" element of assault. We reverse and remand the second-degree assault conviction, based on the fifth challenge, and otherwise affirm.

## FACTS

Defendant was charged with committing crimes against N on two separate occasions, in January 2020 and March 2020. N testified regarding both incidents at defendant's trial. Police officers who spoke with N three days after the March 2020 incident also testified. The jury ultimately acquitted defendant of the charges related to the January 2020 incident, so we limit our discussion to the March 2020 incident.

N testified that she was in the bathroom straightening her hair with a flat iron when defendant entered, unplugged the flat iron, and wrapped the electrical cord around her neck three times. He tightened the cord, and N lost consciousness, injuring her knees when she fell onto the tile floor. When N regained consciousness, defendant

dragged her to the adjacent bedroom, placed her in the closet, and handcuffed her to the metal closet rod. N testified that she did not consent to any of defendant's conduct.

Defendant gave a different version of events. He admitted that an incident occurred and that he choked N. However, he contended that N had consented to his conduct and that engaging in BDSM[1] was a part of their relationship. According to defendant, before choking N with the electrical cord, he asked her if he had a "green light," and she said yes, indicating her consent, and they sat down together on a seat in the bathroom. Defendant testified that he was "gentle" in tightening the cord and was "looking for taps, looking for struggle." He perceived her to be enjoying being choked. As for N losing consciousness, defendant told the police that she did not, and he testified at trial that he "wasn't looking for a loss of consciousness, just a gray, because it is dangerous." He also denied that she injured her knees in the incident, asserting that her knees were red from something else. Defendant acknowledged on cross-examination that strangling someone is dangerous and could cause death and stated that "that's why you include [the person being strangled]."

Despite defendant's focus on consent in defending himself against the charges, the trial court was not asked to give and did not give any specific instructions to the jury regarding consent or its relevance, if any, to the various charges. The jury was sent to deliberate. Evincing its uncertainty as to the relevance of the consent evidence, the jury sent a question to the court during deliberations: "Is there a consent or non-consent portion for Strangulation, Assault 2, and Kidnapping 2?"

The court discussed the jury's question with the prosecutor and defense counsel. As to kidnapping, the court and counsel agreed that the crime required defendant to have taken or confined N "without consent or legal authority," ORS 163.225(1), and the court answered the jury's question as to kidnapping in a manner consistent with that

---

[1] BDSM is an acronym for sexual activity entailing "bondage, discipline, dominance, submission, sadism, and masochism." *Doe v. Rector and Visitors of George Mason University*, 149 F Supp 3d 602, 609 (ED Virginia 2016).

understanding. As to assault, defendant took the position that consent was relevant to whether he acted "knowingly" in causing an injury to N. The court responded that that was a matter for argument, not an answer to the jury's question. The court expressed concern about invading the jury's deliberative process at all, but it felt that it was necessary to make the jury aware that "consent or non-consent is simply not a factor." The court and counsel did not separately discuss strangulation, but it appears that everyone understood that defendant was also objecting to the instruction as to strangulation on similar grounds as assault. Ultimately, the court answered the jury, "[W]ith regard to Strangulation and Assault there is no consent or non-consent portion or element to those statutes."

The jury found defendant guilty of strangulation, second-degree assault, and UUW, based on the March 2020 incident. They found him not guilty of second-degree kidnapping in the March 2020 incident.

## LACK OF INSTRUCTION ON MENTAL STATE FOR "PHYSICAL INJURY" (ASSAULT)

We begin with defendant's supplemental (fifth) assignment of error, in which he challenges the lack of a jury instruction on the culpable mental state for the "physical injury" element of second-degree assault. After defendant filed his opening brief, the Supreme Court held in *State v. Owen*, 369 Or 288, 321-22, 505 P3d 953 (2022), that the physical injury element of second-degree assault is a result element that carries, at a minimum, a culpable mental state of criminal negligence. Relying on *Owen*, defendant contends that the trial court plainly erred in failing to instruct the jury that, to find him guilty, it had to find that he was at least criminally negligent regarding the fact that his conduct would cause N physical injury. The claim of error is unpreserved, as defendant acknowledges, but defendant contends that the error is "plain" and that we should exercise our discretion to correct it. In response, the state concedes that the error is plain but argues that it is unlikely to have affected the verdict and that we should therefore not exercise our discretion to correct it. We agree with defendant.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to correct a "plain" error. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If the trial court made a "plain" error, it is a matter of discretion whether we will correct it. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

A person commits second-degree assault when a person "[i]ntentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon[.]" ORS 163.175(1)(b). The Supreme Court has construed the first part of the statute to create two elements: first, that the person intentionally or knowingly engaged in an act involving physical contact with another person, and, second, resultant physical injury. *Owen*, 369 Or at 302-03. Under *Owen*, "the physical injury element in second-degree assault is a result element which carries, at a minimum, a culpable mental state of criminal negligence." *State v. Hatchell*, 322 Or App 309, 314-15, 519 P3d 563 (2022); *see also Owen*, 369 Or at 320 (rejecting argument that the requisite mental state for the physical-injury element should be "knowingly"). It is legal error after *Owen* to fail to instruct the jury "that the defendant must act with a culpable mental state as to the injury element" to be found guilty of second-degree assault. *Hatchell*, 322 Or App at 315; *see also State v. Jury*, 185 Or App 132, 139, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (we apply the law as it exists at the time of our appellate decision). Moreover, it is obvious and indisputable after *Owen* that the instruction that must be given is that the defendant has to have been at least criminally negligent as to physical injury to be found guilty. *Owen*, 369 Or at 322.

We therefore accept the state's concession that the trial court plainly erred in failing to instruct the jury on the culpable mental state for the physical-injury element. The disputed issue is whether we should exercise our discretion to correct the error. In deciding whether to exercise

discretion to correct instructional errors of this type, we and the Supreme Court have primarily focused on whether the error was harmless, that is, whether there is little likelihood that it affected the verdict. *See, e.g.*, *State v. McKinney/Shiffer*, 369 Or 325, 334-36, 505 P3d 946 (2022) (concluding that the error was not harmless and exercising discretion to correct it); *Hatchell*, 322 Or App at 315-16 ("[I]t is appropriate to exercise our discretion to correct that plain error in this case, because * * * the error was not harmless."); *see also State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (an error is harmless "if there was little likelihood that the error affected the jury's verdict"). In assessing harmlessness, "we consider the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *Owen*, 369 Or at 323 (internal quotation marks omitted).

In this case, we are unpersuaded that the error was harmless, and we exercise our discretion to correct it. As relevant to the second-degree assault charge, defendant admitted that he had wrapped an electrical cord around N's neck three times and tightened it, but he claimed that he did so as part of consensual BDSM activity, that he was "gentle" in tightening the cord, that he watched for any tapping or struggling by N, and that N did not lose consciousness. He further testified that he understood the inherent risks of choking and was careful because of that. Finally, there is reason to believe that the jury found that N *did* consent to at least some of defendant's conduct, given how the case was argued and the fact that the jury acquitted him of the kidnapping charge, which is the only charge on which it was instructed that consent mattered. The jury also acquitted defendant on charges related to a separate incident in January 2020, indicating that it did not entirely credit N's version of the events to which she testified.

Under the circumstances, we cannot say that there is little likelihood that the error affected the verdict. Properly instructed, the jury would have had to decide whether, at a minimum, defendant was criminally negligent in that he "fail[ed] to be aware of a substantial and unjustifiable risk" of physically injuring N. ORS 161.085(10). The next

most culpable state, recklessness, would have required the jury to find that defendant was "aware of and consciously disregard[ed] a substantial and unjustifiable risk that the result w[ould] occur[.]" ORS 161.085(9). For both criminal negligence and recklessness, "[t]he risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10); ORS 161.085(9).

Because it was not instructed on the culpable mental state for the physical-injury element of assault, the jury had no need to decide whether there was a substantial and unjustifiable risk that defendant's conduct would cause N physical injury, whether defendant consciously disregarded or failed to be aware of such a risk, or whether disregard of such a risk constituted a gross deviation from the standard of care that a reasonable person would observe in the situation. In this case, it is unclear what the jury would have found had it been properly instructed. Because there is some likelihood that the error affected the jury's verdict on the second-degree assault count, the error was not harmless, and we exercise our discretion to correct it. In doing so, we emphasize that the issue is not whether a jury *could* have found defendant to have the requisite mental state on this record; rather, it is whether there is some likelihood that the jury might *not* have been persuaded that he had the requisite mental state, had it considered that issue. *See Davis*, 336 Or at 32 ("The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling.").

Accordingly, we reverse and remand defendant's conviction for second-degree assault. In light of that disposition, we do not reach defendant's second assignment of error, regarding the court's answer to the jury on "consent" as to the assault charge. Even if that issue arises again on remand, it is unlikely to arise in the same posture as presented here, so we decline to address it at this juncture. Similarly, we do not reach defendant's third assignment of error, challenging the lack of a jury instruction on the mental state for the "deadly

or dangerous weapon" element of assault, given that it is unlikely to arise again in a plain-error posture.

## LACK OF INSTRUCTION ON MENTAL STATE FOR "DANGEROUS OR DEADLY WEAPON" (UUW)

We next address defendant's fourth assignment of error, regarding the lack of a jury instruction on the mental state for the "dangerous or deadly weapon" element of UUW. Defendant argues that the trial court plainly erred by failing to instruct the jury that, to find him guilty of UUW, it had to find that he knew that the electrical cord was a "dangerous or deadly" weapon. *See* ORS 166.220(1)(a) (regarding use of a "dangerous or deadly weapon" to commit UUW).

Defendant acknowledges that the claim of error is unpreserved and requests plain-error review. The state disputes that the requirements for "plain" error are met. We need not resolve that dispute, because there is little likelihood that instructing the jury as advocated by defendant on appeal would have affected the verdict. As such, even if it was plain error not to give the instruction, we would not exercise our discretion to reverse the UUW conviction on that basis. *See State v. Belen*, 277 Or App 47, 57, 369 P3d 438 (2016) (declining to exercise discretion to correct an unpreserved instructional error, because the error "was harmless").

For purposes of UUW, a "dangerous weapon" includes any device "which under the circumstances in which it is used *** is readily capable of causing death or serious physical injury." ORS 161.015(1); *see also* ORS 161.015(8) ("'Serious physical injury' means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."). In this case, defendant wrapped an electrical cord around N's neck three times and then tightened it to the point of strangling her. Defendant sought to persuade the jury that N consented to his conduct and that he intended to deprive N of air only to a point that it was pleasurable and not to the point of unconsciousness or injury. He did not seek to persuade the jury that he did not know that an electrical

cord repeatedly wrapped around someone's neck and tightened is *readily capable* of causing death or serious physical injury. Indeed, he acknowledged on cross-examination that strangling someone is inherently dangerous and must be done with care to avoid such consequences.

In other words, the essence of defendant's defense was that he was trying to use a dangerous weapon in a manner that would avoid actual injury to N. But, even if the jury was persuaded that defendant did not intend to injure N, there is little likelihood that it would not have still found that he knew that an electrical cord wrapped repeatedly around someone's neck and tightened is a dangerous weapon, in that it is *readily capable* of causing death or serious physical injury. There is little likelihood that giving the instruction that defendant now views as necessary would have affected the verdict on the UUW charge, so any plain error in not giving that instruction was harmless, and we would not exercise our discretion to correct it. The UUW conviction is affirmed.

## "CONSENT" INSTRUCTION AS TO STRANGULATION

That leaves the strangulation conviction. In his first assignment of error, defendant argues that the trial court erred by telling the jury during deliberations, in response to a jury question, that "there is no consent or non-consent portion or element to" the crime of strangulation.

The crime of strangulation is defined as follows:

"(1)   A person commits the crime of strangulation if the person knowingly impedes the normal breathing or circulation of the blood of another person by:

"(a)   Applying pressure on the throat, neck or chest of the other person; or

"(b)   Blocking the nose or mouth of the other person.

"(2)   Subsection (1) of this section does not apply to legitimate medical or dental procedures or good faith practices of a religious belief."

ORS 163.187.

It is readily apparent that consent is not an "element" of the crime of strangulation, making that portion of the court's answer correct. As for whether consent is otherwise a "portion" of the crime (a nonlegal term used by the jury in its question and included in the court's answer), the legislature has identified three specific situations in which the crime of strangulation "does not apply"—legitimate medical procedures, legitimate dental procedures, and good faith religious practices—and consensual sexual activity is not one of them. ORS 163.187(2). The presence of consent also would not undermine defendant having the requisite culpable mental state for strangulation, which requires only that a person "knowingly impedes the normal breathing or circulation of the blood of another person by * * * [a]pplying pressure on the throat, neck or chest of the other person."[2] ORS 163.187(1)(a).

Defendant argues that the legislature must have intended for consent to be a defense to strangulation and assault.[3] In making that argument, defendant fails to account for the express text of the strangulation statute. There is no better indication of the legislature's intent than the actual words of the statute. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). Defendant also relies heavily on the idea that some type of consent defense must exist or else doctors performing surgery and athletes engaging in violent sports would be subject to criminal liability for acts that would meet the definition of strangulation or assault. That point is not well taken, because there is an express exception for legitimate medical procedures in the strangulation statute, and, more generally, the defense of justification applies to any conduct "authorized by law." *See* ORS 161.190 ("In any prosecution for an offense, justification, as defined in ORS 161.195 to 161.275, is a defense."); ORS 161.195(1) ("Unless inconsistent with other provisions of chapter 743,

---

[2] By admitting that he intentionally wrapped the electrical cord around N's neck and tightened it to impede her breathing, defendant effectively admitted that he had the requisite mental state for strangulation.

[3] Defendant argues his first and second assignments of error together, *i.e.*, he does not distinguish between strangulation and assault in arguing the consent issue and, to some extent, appears to be thinking more of assault. To be clear, our holding is limited to the crime of strangulation.

Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is required or authorized by law ***.").[4] We are unpersuaded that the legislature intended consent to be a defense to strangulation.

The trial court did not err when it answered the jury that "there is no consent or non-consent portion or element to" the crime of strangulation. That statement was legally correct. We also reject defendant's collateral assertion that the court's answer amounted to an improper comment on the evidence, which reduces to an argument that, having allowed defendant to testify that N consented to his conduct, it was improper to correctly instruct the jury on the law. Defendant chose not to request any instructions on consent. In the absence of instructions or other guidance as to how consent was relevant to the various charges, the jury asked a question, and the trial court did not err by giving a correct answer to that question.

Conviction for second-degree assault reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[4] The legislature has specifically authorized a variety of conduct related to medical care and sports. *See, e.g.*, ORS chapter 677 (allowing and regulating the practice of medicine and the practice of acupuncture); ORS 690.350 - 690.410 (allowing and regulating body piercing and tattooing, among other things); ORS chapter 463 (allowing and regulating unarmed combat sports and entertainment wrestling).