Argued and submitted October 4, 2022, conviction on Count 13 reversed and remanded for entry of conviction for second-degree kidnapping; remanded for resentencing, otherwise affirmed June 14, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

COSMO LUEY MILES,
aka Cosmo Luey Seal,
*Defendant-Appellant.*

Marion County Circuit Court
19CR56492; A173923

533 P3d 368

Defendant appeals multiple convictions for serious sex crimes and other crimes including kidnapping. Defendant argues, among other things, that the trial court erred by convicting him of two counts of first-degree kidnapping and plainly erred by convicting him of second-degree assault. Defendant also challenges his sentence. *Held*: Regarding the kidnapping convictions, there was sufficient evidence to support the asportation and purpose elements of the crimes, but the trial court plainly erred by convicting defendant of first-degree kidnapping on Count 13 because the victim was not under 12 years of age. Regarding the conviction for second-degree assault, although the trial court plainly erred by failing to consider whether defendant was at least criminally negligent of the risk of causing serious physical injury when he tackled the victim, the Court of Appeals declined to exercise its discretion to correct the error because it was harmless. Finally, any alleged error during sentencing can be addressed on remand.

Conviction on Count 13 reversed and remanded for entry of conviction for second-degree kidnapping; remanded for resentencing; otherwise affirmed.

Susan M. Tripp, Judge.

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Conviction on Count 13 reversed and remanded for entry of conviction for second-degree kidnapping; remanded for resentencing; otherwise affirmed.

**PAGÁN, J.**

In this criminal appeal, defendant raises numerous challenges to his multiple convictions for serious sex crimes and various related crimes including kidnapping, as well as the decades-long sentence imposed for those convictions. In two assignments of error, defendant challenges the trial court's denial of a motion for judgment of acquittal (MJOA) for two separate counts of first-degree kidnapping. In a supplemental brief, defendant argues that the trial court plainly erred in convicting him on one of the kidnapping counts, because it did not constitute first-degree kidnapping as charged. As explained below, we reject defendant's arguments regarding the MJOA, but we accept the state's concession that evidence regarding one of the kidnapping counts was not sufficient to support a conviction for first-degree kidnapping but was sufficient to support a conviction for second-degree kidnapping. In a second supplemental brief, defendant contests his conviction for second-degree assault; however, we decline to exercise our discretion to correct any plain error. Finally, defendant claims that the trial court erred in sentencing him when it used multiple major felony sex crimes committed in the same criminal episode as a basis to sentence him under the repeat major felony sex offender statute. That alleged error can be addressed on remand for resentencing. We therefore reverse and remand a single count of first-degree kidnapping for entry of a judgment of second-degree kidnapping, remand for resentencing, and otherwise affirm.

## I.  FACTS

As the majority of this case involves analysis of the trial court's decision to deny defendant's MJOA, we state the facts in accordance with the standard of review for such appeals. In our review of the denial of an MJOA, we view the facts in the light most favorable to the state to determine whether a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Eastman*, 282 Or App 563, 565, 385 P3d 1182 (2016), *rev den*, 361 Or 311 (2017).

Over a period of seven hours, defendant physically and sexually assaulted the victim, C, in her home. Defendant

met C while defendant was incarcerated in the Oregon State Penitentiary. C worked at the prison. After defendant was released in May 2019, they began a relationship. Defendant lived and worked in Eugene but would stay with C at her home in Salem each weekend.

In late August 2019, defendant was staying with C and went to bed early. C came to bed later, around 1:00 a.m., and accidentally woke defendant, who then went downstairs to smoke a cigarette. Defendant came back to the bedroom, and after a brief verbal exchange, he jumped on C's back as she laid on the bed, put his arm around her neck, and choked her. They both fell to the floor and defendant put his hands around C's neck and choked her again. C believed she was going to die.

C reached for a knife that she had hidden under the mattress, but defendant grabbed the knife himself. The knife "never left his hand after that." Defendant told C to get back on the bed, and stabbed the area around C's head, as well as artwork hanging on the wall above the bed. Defendant held the knife to C's head and also to her vagina, and he told her that if she "screamed or anything, he was going to cut [her] from the inside out or something along those lines."

Defendant handcuffed C with two sets of handcuffs that C had in her room. He then told her to put her vagina on his mouth. After that, defendant raped C, while holding the knife the entire time. C did not tell defendant "no" because she was "terrified for [her] life."

Defendant brought C downstairs, naked and handcuffed, to get some cigarettes. They went into the garage to get the cigarettes and then went back upstairs where defendant smoked them.

Defendant tried to rape C again, but he could not achieve an erection. Defendant took C downstairs again so that he could take an injectable erectile dysfunction medication that he kept in the refrigerator. C did not go willingly; she was "tied up," "bloody," "hurt," and "scared." C asked defendant to let her go, but he refused. C decided to "make a run for it out the front door" but defendant tackled her. C's

wrists were still handcuffed, and she could not catch herself as she fell, so she fell on her knees. C heard "a big pop" and thought her knee was broken. Defendant strangled C until she lost consciousness, though she "was not sure for how long." When she awoke, defendant was coming in from the garage with a rope. Because the handcuffs broke when C fell, defendant replaced them with the rope, tying her hands behind her back and securing a towel in her mouth.

Defendant pulled C by her hair and carried her back upstairs—C could not walk because of the knee injury. Defendant began to drink vodka. Defendant put C on the bed and then put his penis and fist in C's vagina. Defendant then sodomized C.

Defendant later went into the bathroom and tried to slit his wrists. C was able to untie her wrists but remained in the bedroom because of her knee injury. Defendant took the rope and tried to hang himself. Defendant, intoxicated, called his brother, asking for his brother to pick him up. Defendant's brother wanted to know if C was okay and defendant gave the phone to C to text that message. C instead texted defendant's brother that she needed help and provided her address.

Police arrived at C's home around 8:15 a.m. and forced open the door. Defendant was arrested. Police found C in the upstairs bedroom with facial injuries and blood on the bedsheets. C later saw an orthopedic surgeon and she discovered that she would need knee surgery.

Defendant was charged with 18 counts: three counts of strangulation, ORS 163.187 (Counts 1, 3, and 11); one count of fourth-degree assault, ORS 163.160 (Count 2); two counts of unlawful use of a weapon, ORS 166.220 (Counts 4 and 5); two counts of first-degree rape, ORS 163.375 (Counts 6 and 14); two counts of first-degree sodomy, ORS 163.405 (Counts 7 and 15); two counts of first-degree kidnapping, ORS 163.235 (Counts 8 and 13); one count of second-degree assault, ORS 163.175 (Count 9); two counts of attempted second-degree assault, ORS 163.175, ORS 161.405 (Counts 10 and 12); two counts of unlawful sexual penetration, ORS 163.411 (Counts 16 and 17); and, one count of menacing,

ORS 163.190 (Count 18). Defendant waived jury trial and was convicted by the court of each count, except Count 17.

## II.   ANALYSIS

We proceed in three parts. First, we analyze whether the trial court erred by convicting defendant of two counts of first-degree kidnapping, considering the asportation and purpose elements of each count. Second, we address whether the trial court plainly erred by convicting defendant on the second-degree assault count without considering the *mens rea* required for the physical injury element. Third, and finally, we briefly address defendant's assignment of error regarding his sentence.

### A.   *Kidnapping Charges*

A person commits first-degree kidnapping if he violates the second-degree kidnapping statute, ORS 163.225,[1] and acts with an additional prohibited purpose. Those prohibited purposes include, among other things, to terrorize the victim or to further the commission or attempted commission of rape in the first degree, sodomy in the first degree, or unlawful sexual penetration in the first degree. ORS 163.235. Defendant was convicted of two counts of first-degree kidnapping: Count 8, for taking C downstairs with the purpose of terrorizing her; and Count 13, for taking C upstairs in order to commit first-degree rape, sodomy, and unlawful sexual penetration.

During closing arguments of the bench trial, defendant argued that the state had failed to present sufficient evidence that defendant committed kidnapping in the first degree. He argued that the state had failed to prove that defendant had the requisite purpose to terrorize C or to commit further sexual offenses against her. The parties subsequently provided the court with written arguments

---

[1] ORS 163.225 reads, in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a)  Takes the person from one place to another; or

"(b)  Secretly confines the person in a place where the person is not likely to be found."

concerning whether defendant took C "from one place to another." The court ultimately found defendant guilty of both charged counts of first-degree kidnapping.

In his opening brief on appeal, defendant challenges the court's denial of his MJOA, arguing that the state failed to present sufficient evidence of the "asportation" element for both counts and that, with respect to Count 8, the state adduced insufficient evidence that defendant kidnapped C with the intent to terrorize her. In his first supplemental brief, defendant asserts that the trial court plainly erred in convicting him of first-degree kidnapping on Count 13, because the victim was not under the age of 12 and he therefore did not commit first-degree rape, sodomy, or unlawful sexual penetration as referenced in ORS 163.235(1)(e). We address each count separately.

1.   Count 13

As noted, Count 13 was based on defendant taking C from downstairs to upstairs for the purpose of committing further sexual offenses against her. ORS 163.235(1) states:

> "A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 [(kidnapping in the second degree)] with any of the following purposes:
>
> "*****
>
> "(e)   To further the commission or attempted commission of any of the following crimes against the victim:
>
> "(A)   Rape in the first degree, as defined in ORS 163.375(1)(b);
>
> "(B)   Sodomy in the first degree, as defined in ORS 163.405(1)(b); or
>
> "(C)   Unlawful sexual penetration in the first degree, as defined in ORS 163.411(1)(b)."

Each of the referenced sections of the first-degree sexual offenses requires the victim to be under 12 years of age. ORS 163.375(1)(b); ORS 163.405(1)(b); ORS 163.411(1)(b). Because C was an adult at the time of the offenses, defendant argues that the trial court plainly erred in convicting him of first-degree kidnapping.

The state concedes that the court plainly erred, and we accept the concession. We agree with the parties that this supplemental assignment of error was not preserved, and we exercise our discretion to review it as plain error. Whether defendant's conduct satisfied the element for conviction under the specified statute is a question of law, the error is obvious and not reasonably in dispute, and the error is apparent on the face of the record. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). In this instance, the presence of an erroneous conviction for first-degree kidnapping on defendant's criminal record is sufficiently grave to warrant correction and we perceive no strategic reason for defendant to have failed to object to conviction for a crime that he could not have committed. *See State v. Valladares-Juarez*, 219 Or App 561, 564-65, 184 P3d 1131 (2008) (noting considerations when exercising discretion to correct plain error in failing to merge two counts of first-degree kidnapping). The factors expressed in *Ailes* weigh in favor of correcting the error. 312 Or at 382 n 6.

Because the appropriate remedy would be to remand with instructions to enter a conviction on second-degree kidnapping if the other elements were all met, we also address defendant's assignment of error regarding the asportation element of kidnapping.

A "defendant can be said to have moved the victim from 'one place' to 'another' only when the defendant changes the position of the victim such that, as a matter of situation and context, the victim's ending place is qualitatively different from the victim's starting place." *State v. Sierra*, 349 Or 506, 513, 254 P3d 149 (2010), *adh'd to as modified on recons*, 349 Or 604, 249 P3d 759 (2011). Moving a victim within the same house or building may be sufficient. *Id.* at 517 (rejecting categorical rule that movement within the same structure is insufficient to show asportation). However, even when a victim is moved from one place to another, to come within the purview of the kidnapping statutes, that movement cannot be merely incidental to other crimes. *Id.* at 514-15; *see, e.g.*, *State v. Murray*, 340 Or 599, 606-07, 136 P3d 10 (2006) (moving victim from one car seat to another was incidental to defendant's theft of car).

We thus consider whether there was sufficient evidence to find that defendant moved C to a qualitatively different place, for purposes of Count 13, when he dragged her upstairs after injuring, binding, and gagging her. We have little difficulty concluding that there was sufficient evidence for a rational factfinder to find that defendant moved C from one place to another. From the starting point, on the first floor of her home, defendant carried C back upstairs to her bedroom. Although that is within the same structure, in the situation and context of this case, moving C from the first floor, where she had attempted to escape, to her upstairs bedroom, represents movement to a qualitatively different place. The movement from downstairs to upstairs was far more than minimal. *Cf. Sierra,* 349 Or at 516 (stating that because statutory language requires movement to a second, distinct place, minimal movement in position or posture is generally insufficient). A rational factfinder could readily find that the difference between downstairs and upstairs promoted or effectuated "a substantial interference with [C's] personal liberty." *Eastman*, 282 Or App at 572 (internal quotation marks omitted). In C's situation, where she was bound at the wrists and gagged, and had an injured knee, moving her upstairs would serve both to "limit the victim's freedom of movement" and "increase the victim's isolation." *State v. Washington*, 266 Or App 133, 138, 337 P3d 859 (2014), *rev den*, 356 Or 767 (2015) (internal quotation marks omitted).

With respect to whether the asportation alleged in Count 13 was incidental to other crimes, defendant's conduct in binding, gagging, and carrying C upstairs shows an intent to substantially interfere with the victim's personal liberty, which permits a finding that the kidnapping was not incidental to the crimes of rape, sodomy, and unlawful sexual penetration. *Eastman*, 282 Or App at 574. Like in *Washington*, defendant's movement of C to the upstairs level of the house was preliminary to the subsequent sex crimes and indicated an intention to keep the victim under control and isolated. 266 Or App at 145. A rational factfinder could find that such movement from downstairs to upstairs was qualitatively different and was not incidental to the commission of another crime. *Cf. Murray*, 340 Or at 606 (forcing

victim to move from driver's seat to passenger seat was incidental to theft, not a separate kidnapping offense). The trial court did not err by denying the MJOA on Count 13 under the asportation argument. We therefore conclude that the proper remedy based on the plain error discussed above is to reverse the first-degree kidnapping conviction and remand with instructions to enter a conviction on second-degree kidnapping.

    2.    Count 8

        Count 8 was based on defendant taking C from upstairs to downstairs for the purpose of terrorizing her, thus enhancing the crime to first-degree kidnapping. *See* ORS 163.235(1)(d). As noted, defendant challenged the sufficiency of the evidence for Count 8 with respect to both the asportation element and the purpose element.

        We begin with asportation. The movement of C from upstairs to downstairs for defendant to take his erectile dysfunction medication presents a closer call on whether there was a qualitative difference between the two places than Count 13, but ultimately, we conclude that a rational factfinder could find that defendant took C from one place to another within the meaning of the statute. First, in the situation and context of the movement from upstairs to downstairs, defendant had already displayed an unwillingness to leave C alone upstairs, as his previous trip to get cigarettes in the garage also involved bringing C, naked and handcuffed, downstairs. In the context of being unwilling to leave C alone upstairs, the later movement—to take erectile dysfunction medication after an unsuccessful attempt at penetration—evidenced defendant's intention to increase or maintain his control of C. We recognize that an individual's intent in keeping control over a person is not dispositive in determining whether the beginning and ending places are qualitatively different. *See Sierra*, 349 Or at 516. However, in the instant case, by bringing C downstairs, C ended up in a place that was qualitatively different to her personal liberty than being left alone upstairs.

        For the same reasons discussed above for Count 13, defendant's movement of C from upstairs to downstairs was

not incidental to or inherent in any of the crimes occurring before or after the movement. Here, the evidence indicates that defendant forced C to go downstairs to allow him to take medication. Although that was related to his failed attempt at rape immediately beforehand and to the second set of sex crimes that occurred later, nothing about those acts implicated any movement by C. That is, any of those crimes could have been accomplished without moving C from upstairs to downstairs. And by moving C after the initial rape but before the subsequent rape, it is reasonable to infer that the movement reflected defendant's "intent to *keep* the victim under control and isolated." *Washington*, 266 Or App at 145 (emphasis in original).

Considered as a whole, the evidence was sufficient to allow a rational factfinder to find that defendant intended to and did substantially interfere with C's personal liberty by moving her from place to place. The trial court did not err by denying defendant's MJOA with respect to the asportation element of Count 13.

We thus turn to the purpose element that elevated the offense to first-degree kidnapping; namely, whether defendant took C downstairs with the purpose of terrorizing her. To "terrorize" means to fill "with intense fear or dread." *Sierra*, 349 Or at 520. As explained in the Criminal Law Revision Commission's final draft, the term applies to "'[v]engeful or sadistic abductions accompanied by threats of torture, death or other severely frightening experience.'" *Id*. at 519 (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 99 (July 1970)). That consideration turns on the intent or purpose of the criminal actor, not the subjective effect on the person kidnapped or other people. *Id*.

*Sierra* provides a good example of when evidence is sufficient to support a finding that a criminal actor's intent was to terrorize. In that case, the defendant returned to the place of a previous encounter with the victim, armed with a weapon "with the express purpose of using a crossbow to coerce an apology from [the victim]." *Id*. at 520. The defendant pointed the crossbow at the victim's head and forced him to kneel. *Id*. In addition, the defendant "yelled at [the

victim], called him names, threatened to harm [the victim and the victim's daughter], and kicked [the victim] in the head." *Id.* In those circumstances, a rational juror could have inferred that the defendant's purpose was to take revenge on the victim by causing the victim to undergo a "severely frightening experience." *Id.* That purpose was different and greater than the force or threat of force used to accomplish a kidnapping.

In contrast, in another case, we concluded that evidence that the victim was ultimately murdered by the defendant was insufficient to demonstrate an intent to terrorize. *State v. Nulph*, 31 Or App 1155, 1165, 572 P2d 642 (1977), *rev den*, 282 Or 189 (1978). In the absence of evidence of a "vengeful or sadistic intent," the evidence of intent to murder did not equate to terrorizing the victim because murder "can be accomplished by surprise or otherwise without terror." *Id.* We noted, however, that there was some "slight evidence of nonconsensual sexual conduct," but that was insufficient to infer an intent to terrorize. *Id.* "To prove intent to terrorize, there must be evidence of a purpose to do more than that which is necessary to take or confine by force, threat or deception ***." *Id.*

We conclude that this case has more in common with *Sierra* than *Nulph*. As part of the broader context and situation, defendant had threatened to kill C, had strangled her twice, had used the knife to stab the mattress around her head, had told C that "he was going to cut [her] from the inside out" while holding the knife to her vagina, had raped her, and had attempted to rape her a second time. Those acts, coupled with defendant's erratic and brutal behavior, indicated some broader general purpose or intent toward C, which was manifest throughout the encounter from about 1:00 a.m. until the police arrived around 8:00 a.m. In the specific context of the conduct alleged as the basis for Count 8, a rational factfinder could find that defendant, while forcing C to go downstairs to allow him to take erectile dysfunction medication, intended to subject C to the fear of an impending rape. That is a sufficient basis for a factfinder to infer that defendant intended "to do more than that which [was] necessary to take or confine by force, threat or deception."

*Nulph*, 31 Or App at 1165. Thus, the trial court did not err by denying defendant's MJOA for first-degree kidnapping on Count 8.

## B.   Mens Rea *for Injury Element of Second-Degree Assault*

In a supplemental assignment of error, defendant contends that in finding defendant guilty of second-degree assault, Count 9, for tackling C and injuring her knee, the trial court plainly erred by failing to consider whether defendant had at least a criminally negligent mental state with respect to the injury element of the crime.[2] We consider whether the trial court plainly erred under the contours of *State v. Owen*, 369 Or 288, 322, 505 P3d 953 (2022), and *State v. McKinney/Shiffer*, 369 Or 325, 333-34, 505 P3d 946 (2022), in which the court held that a defendant must be at least criminally negligent with respect to the "caus[ing] serious physical injury" element of second-degree assault. Although the bench trial in this case was conducted before the Oregon Supreme Court overruled *State v. Barnes*, 329 Or 327, 338, 986 P2d 1160 (1999), which was understood to hold that the state needs to prove that a defendant "was aware of the assaultive nature of his conduct," we assess whether any error was plain based on the law at the time of the appeal, not the time of trial. *State v. Ulery*, 366 Or 500, 503, 464 P3d 1123 (2020).

As explained earlier, an error is plain when it is an error of law, obvious and not reasonably in dispute, and when it appears on the face of the record. *Ailes*, 312 Or at 381-82. If those requirements are satisfied, the second step is to decide whether to exercise discretion to consider the error. *State v. Vanornum*, 354 Or 614, 630, 317 P3d 889 (2013). "That discretion entails making a prudential call that takes into

---

[2] ORS 163.175 states, in part:

"(1) A person commits the crime of assault in the second degree if the person:

"(a) Intentionally or knowingly causes serious physical injury to another;

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life."

account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case." *Id.*

Even when a trial court plainly errs, it does not follow that we must correct the error, or indeed that the error affected a substantial right. *Ailes*, 312 Or at 382 (explaining discretion entailed in correcting plain errors); *McKinney/Shiffer*, 369 Or at 335 (applying constitutional harmlessness analysis to instructional plain error). We cannot correct errors that had little likelihood of affecting the outcome of a case. *State v. Davis*, 336 Or 19, 28-32, 77 P3d 1111 (2003) (describing constitutional harm required by Article VII (Amended), section 3, of the Oregon Constitution); *State v. Kerne*, 289 Or App 345, 349-50, 410 P3d 369 (2017), *rev den*, 363 Or 119 (2018) (appellate courts cannot exercise discretion to correct harmless plain error).

In the particular circumstances of this case, although the trial court plainly erred by failing to consider whether defendant was at least criminally negligent of the risk of serious physical injury when he tackled C—who was naked and handcuffed—as she attempted to escape, it is not the kind of error that we can correct because the error is harmless. *See State v. Murphy*, 319 Or App 330, 339, 510 P3d 269 (2022) (gravity of harm in plain error posture may be assessed by whether there was little likelihood that error affected verdict). Although in this case, the trial court did not recite extensive factual findings supporting its finding of guilt for Count 9, there is little reason to conclude that it would have found differently had it considered the *mens rea* for the physical injury element of the crime. That is, in the context of tackling C from behind while she was handcuffed at the wrists, we conclude that the trial court would have found that defendant failed to be aware of a substantial risk that so doing could cause a serious physical injury, or that the risk was of such a nature and degree that defendant's failure to be aware of it was a gross deviation from the standard of care that a reasonable person would observe. *McKinney/Shiffer*, 369 Or at 335. Considering a culpable mental state for the physical injury element would not have made a difference. Thus, the harm, if any, that arose from the error was not grave. *Murphy*, 319 Or App at 339; *see also State v.*

*Digesti*, 267 Or App 516, 524-25, 340 P3d 762 (2014), *rev den*, 357 Or 111 (2015) (declining to correct alleged plain error when it would not have changed the outcome). We therefore reject defendant's supplemental assignment of error.

C.   *Sentencing Under ORS 137.690*

At sentencing, the trial court considered defendant's convictions on Count 6 (first-degree rape) and Count 7 (first-degree sodomy), as previous convictions under ORS 137.690(c), and sentenced defendant to the mandatory-minimum 300 months for each of Count 14 (first-degree rape), Count 15 (first-degree sodomy), and Count 16 (first-degree unlawful sexual penetration).[3] On appeal, defendant contends that the trial court applied an incorrect rule of law, the anti-merger rule under ORS 161.067,[4] rather than the separate "criminal episode" definition of ORS 131.505(4).[5]

ORS 137.690 "requires a finding of separate criminal episodes, resulting in an increased sentence." *State v. Thornsberry*, 315 Or App 287, 293, 501 P3d 1 (2021). Here, the record indicates that the court was considering the proper definition under ORS 131.505(4) when it remarked that the question was "whether or not the previous sexual assaults

---

[3]  ORS 137.690 states:

"(a)  Any person who is convicted of a major felony sex crime, who has one (or more) previous conviction of a major felony sex crime, shall be imprisoned for a mandatory minimum term of 25 years.

"*****

"(c)  'Previous conviction' includes a conviction for the statutory counterpart of a major felony sex crime in any jurisdiction, and includes a conviction in the same sentencing proceeding if the conviction is for a separate criminal episode as defined in ORS 131.505."

[4]  ORS 161.067(3) states, in part:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

[5]  ORS 131.505(4) states, "'Criminal episode' means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

found in this sentencing were a separate event, separate—did not arise from the same continuous and uninterrupted course of conduct." However, the trial court then explained its decision by reference to defendant's "time for reflection," which is not a consideration under ORS 131.505(4), but is a consideration for merger of counts under ORS 161.067(3) or for whether to run a defendant's sentences consecutively. *See, e.g.*, *State v. Garcia*, 288 Or 413, 429, 605 P2d 671 (1980) (separate punishments appropriate if "the defendant, after one act, starts anew after a time of reflection"); *State v. Moore*, 319 Or App 136, 145, 510 P3d 907, *rev den*, 370 Or 303 (2022) (application of anti-merger rule determined by whether "there is a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords defendant the opportunity to renounce his or her criminal intent" (internal quotation marks omitted)).[6]

Our review of the sentencing record suggests that the trial court might have employed the incorrect statutory standard in determining whether there was one or more criminal episodes. In any event, in light of our disposition with regard to Count 13, whether defendant's conduct constituted one or more criminal episodes under ORS 131.505(4) may be addressed on remand for resentencing.[7]

Conviction on Count 13 reversed and remanded for entry of conviction for second-degree kidnapping; remanded for resentencing; otherwise affirmed.

---

[6] *State v. Barton*, 304 Or App 481, 490-92, 468 P3d 510 (2020), discusses the relationship between "criminal episode" as defined by ORS 131.505(4) and the anti-merger provisions of ORS 161.067(3).

[7] The state noted that after sentencing in this case, we decided *Thornsberry*, which clarified the burden of persuasion to demonstrate separate criminal episodes for an enhanced sentence under ORS 137.690 and adds gloss to the statutory analysis for the definition of "criminal episode" under ORS 131.505(4). Furthermore, at sentencing, the trial court, at the request of the state, made alternative findings supporting departure sentences and imposition of consecutive sentences—totaling the same sentence imposed with the ORS 137.690 enhancement—should an appellate court conclude the major felony sex crimes were part of the same criminal episode. Because our disposition of Count 13 requires resentencing of all counts, the parties may address the applicable legal standard and burden in light of *Thornsberry* on remand, and the court may also consider whether imposition of the alternate sentence is appropriate.