No. 187            March 27, 2024            591

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AARON JEROME PFANNENSTIEL,
aka Aaron Pfannenstiel,
*Defendant-Appellant.*

Douglas County Circuit Court
20CR36598, 20CR16011; A178238 (Control), A178641

Ann Marie Simmons, Judge.

Argued and submitted January 25, 2024.

John Evans, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

In Case No. 20CR36598, reversed and remanded; in Case No. 20CR16011, affirmed.

Tookey, P. J., concurring in part, dissenting in part.

**KAMINS, J.**

Defendant appeals a judgment of conviction for one count of assault in the second degree, ORS 163.175.[1] On appeal, he assigns error to the trial court's failure to instruct the jury as to the required mental state for the "serious physical injury" element of second-degree assault. The state concedes that the trial court plainly erred but contends that the error was harmless. We agree that the trial court plainly erred, and we further conclude that the error was not harmless. We exercise our discretion to correct the error and reverse.

Defendant had a contentious relationship with his neighbor, K. On the day that led to the charges in this case, several teenagers visited defendant's house and set off fireworks, some of which blew onto K's car. K responded by washing away the teenagers' fireworks with a garden hose and, when one of the teenagers protested, spraying them in the face. Later that evening, defendant, his girlfriend, and three teenagers went to K's house and began pounding on his door with enough force that several pictures fell off the wall. When K opened the door, a fight ensued.

K, an ex-Marine, placed defendant in a "vice grip" that cut off the blood supply to his brain, which, according to K, would put defendant in a stupor within six seconds and kill him within 15. K's wife came to the door, and two of defendant's companions attacked her, causing K to release defendant and confront his wife's attackers. When she left to get a gun, K grabbed defendant again, again attempting to cut off the blood supply to his brain long enough for him to pass out. Defendant's girlfriend hit K on the head with "a pipe, or a beer bottle," causing K to lose consciousness momentarily and fracturing his skull. After K fell to the ground, several people continued to hit him while defendant approached and hit K in the eye. Defendant's actions caused major damage to K's eye—as K put it, defendant "pulled [his] eye out." K previously had limited vision in that eye, due to a past injury requiring six surgeries to place a lens implant and a new cornea. After this incident, K permanently lost vision in that eye.

---

[1] Defendant also appeals a judgment of conviction for one count of second-degree disorderly conduct, ORS 166.025, in Case No. 20CR16011, but he does not assign any errors related to that conviction.

At trial, defendant argued that he acted in self-defense and did not intend to hurt K; rather, he was panicked and trying to escape K's life-threatening hold on him. As to the element of serious physical injury, the prosecutor explained to the jury that it only needed to find that defendant's conduct was assaultive in nature and that it did not need to find a culpable mental state as to the element of serious physical injury. Specifically, the prosecutor argued "the State does not have to show or prove beyond a reasonable doubt that [defendant] knowingly meant to cause [serious physical injury] ***. I just have to show that he knew that his conduct was, was of an assaultive nature."

Consistent with the prosecutor's argument, the jury was instructed that, to convict defendant, it must find that he "knowingly caused serious physical injury" to K. The court elaborated that "knowingly means that the person acts with an awareness that his conduct is of an assaultive nature" but did not include a mental state as to the element of injury. After being so instructed, the jury found defendant guilty of second-degree assault.

We review jury instructions for errors of law. *State v. Theriault*, 300 Or App 243, 250, 452 P3d 1051 (2019). If we determine that the trial court committed plain error, we must then decide whether to exercise our discretion to correct it. *State v. Chemxananou*, 319 Or App 636, 639-40, 510 P3d 954, *rev den*, 370 Or 303 (2022) (citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991)).

On appeal, defendant contends that the trial court erred in failing to instruct the jury that the element of causing serious physical injury also required a culpable mental state. *State v. Owen*, 369 Or 288, 290, 505 P3d 953 (2022). Under *Owen*, for an assault conviction, the jury must find that the defendant "knew that his actions were assaultive *and* that, at least, he negligently caused physical injury by failing to be aware of the risk that his actions would cause such injury." *Id.* (emphasis in original). Thus, as in *Owen*, and as the state concedes, the trial court plainly erred in failing to instruct the jury that defendant knew of the assaultive nature of his conduct and that he was negligent as to resulting injury. *Id.* at 323; *State v. McKinney*, 369 Or 325, 336, 505 P3d 946 (2022)

(holding that the trial court's failure to instruct the jury that a mental state attaches to the serious physical injury element of second-degree assault amounts to plain error).

We further conclude that, had the jury been instructed on the culpable mental state required for the serious physical injury element, it could have made a difference in the outcome of the case. "In deciding whether to exercise discretion to correct instructional errors of this type, we and the Supreme Court have primarily focused on whether the error was harmless, that is, whether there is little likelihood that it affected the verdict." *State v. Stone*, 324 Or App 688, 693-94, 527 P3d 800 (2023). And in determining whether instructional error was harmless, "we consider the instructions 'as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue.'" *Owen*, 369 Or at 323 (quoting *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020)). Given the gravity of the error and its potential impact on the verdict, we exercise our discretion to correct it.

In this case, it is not clear that the jury would have concluded that defendant acted with criminal negligence as to the substantial risk of *serious* physical injury. Criminal negligence requires that a defendant "fail[ed] to be aware of a substantial and unjustifiable risk" such that the "failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). A "serious physical injury" is one "which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." ORS 161.015(8).

At trial, the defense theory was that defendant was acting in a state of panic from being caught in K's "vice grip." Indeed, as presented to the jury, K, an ex-Marine, was trained in lethal combat and intentionally engaged in a chokehold that could have killed defendant within 15 seconds. And, although there was no dispute that K sustained a serious physical injury in losing vision in his eye, there was evidence that K was unusually susceptible to that injury given the previous damage to his eye. Thus, there is

evidence from which a reasonable factfinder could have concluded that K's particular vulnerability, *not* the force used by defendant, caused serious physical injury to K. Regarding the circumstances of the assault itself, although K testified that defendant intentionally gouged out his eye, the jury was not required to take that testimony at face value. Indeed, the jury could have viewed K's testimony as overstated, given that K also testified that defendant had been attempting to gouge out his eye during the entire altercation but had not even knocked off K's glasses until the end of the fight. The jury might have found that, as defendant explained during his police interview that was played to the jury, defendant punched K in a panic without specifically aiming for K's left eye. Moreover, the only evidence that K's eye had been removed from the socket was from K himself—neither the police report, the photos admitted into evidence, nor the medical records depicted the injury in that manner. Although the jury saw evidence of significant bruising around K's eye, the jury may have viewed that bruising as a by-product of the injury ("[a]cute traumatic left ruptured globe"), and not necessarily evidence that defendant aimed to gouge out K's eye.

Had the jury had the opportunity to weigh the culpable mental state that applied to the injury element of second-degree assault, it may have concluded that defendant generally struck K in an assaultive manner and doubted that such conduct rose to the level of criminal negligence regarding whether a *serious* physical injury would result. Finally, the prosecutor compounded the trial court's error by reinforcing the instruction that no mental state was required for the element of serious physical injury. Thus, the jury may have concluded that defendant's actions reflected an awareness that his conduct was assaultive, but that he was not negligent as to the risk of the serious physical injury that occurred.

We cannot conclude on this record that the plain error was harmless; that is, that the verdict indicates that the risk of serious physical injury to K was of such nature and degree that defendant's failure to be aware of it constituted a gross deviation from the standard of care that a reasonable person would exercise. *See State v. Hatchell*, 322 Or App 309, 312, 519 P3d 563 (2022) (concluding that "the

trial court plainly erred in failing to instruct the jury that the mental state of criminal negligence applied to the serious physical injury element of the second-degree assault count, that the error was not harmless, and that it is appropriate to exercise our discretion to correct that error"). We therefore reverse and remand defendant's assault conviction.

In Case No. 20CR36598, reversed and remanded; in Case No. 20CR16011, affirmed.

**TOOKEY, P. J.,** concurring in part, dissenting in part.

I agree with the majority that the trial court plainly erred when it failed to instruct the jury as to the required mental state for the "serious physical injury" element of second-degree assault. I disagree that we should exercise our discretion to correct the error, however, because in my view, the likelihood that the error affected the verdict is "extremely low." *State v. Sell*, 328 Or App 82, 95, 536 P3d 1019 (2023) (declining to exercise discretion to correct as plain error failure to instruct the jury that defendant had to be at least criminally negligent with respect to the injury element of an offense, because there was an "extremely low" likelihood that the error affected the verdict).

For that reason, neither the gravity of the error nor the ends of justice warrant exercising our discretion to reverse and remand for a new trial based on the trial court's failure to give a mental-state instruction on the serious physical injury element. *See State v. Horton*, 327 Or App 256, 265, 535 P3d 338 (2023) (noting that the likelihood that the error affected the verdict goes to the error's "gravity" and to "the ends of justice" in determining whether to exercise our discretion to correct plain error).

An eye is an eye. It is "'proverbially a delicate organ'" that is "'closely connected with intellectual, nervous and physical functions.'" *Eisensmith v. Buhl Optical Co.*, 115 W Va 776, 178 SE 695, 697 (1934) (quoting *Com. v. Houtenbrink*, 235 Mass 320, 324, 126 NE 669, 670 (1920)); *see also Sanchick v. Michigan State Bd. of Examiners in Optometry*, 342 Mich 555, 560, 70 NW2d 757, 759 (1955) (same). That is "common knowledge." *See State v. Shedrick*,

370 Or 255, 271, 518 P3d 559 (2022) (considering jurors' "common knowledge" about ATMs in concluding that failure to give mental state instruction was harmless).

The conduct for which defendant was convicted—the conduct that the victim testified occurred—was defendant putting his finger in the victim's eye and gouging it out. Given common knowledge about eyes and the nature of defendant's assault, I think there is an "extremely low" likelihood that the error in this case affected the verdict; that is, it is extremely likely that a jury would have found that defendant was aware of a substantial and unjustifiable risk of serious physical injury to defendant's eye from gouging it or, if he was unaware, that his failure to be aware constituted a gross deviation from the standard of care a reasonable person would observe. *Id.* (applying standard for determining whether failure to give culpable mental state instruction was harmless); *see State v. Miles*, 326 Or App 410, 423, 533 P3d 368 (2023) (declining to correct plain error because, "in the context of tackling C from behind while she was handcuffed at the wrists, we conclude that the trial court would have found that defendant failed to be aware of a substantial risk that so doing could cause a serious physical injury, or that the risk was of such a nature and degree that defendant's failure to be aware of it was a gross deviation from the standard of care that a reasonable person would observe").

The majority disagrees. It posits that a jury might have found that, rather than gouging the victim's eye (as the victim explicitly testified occurred), the jury could have instead found that "as defendant explained during his police interview * * *, defendant punched [the victim] in a panic without specifically aiming for [the victim's] left eye." 331 Or App at 595.

I see it differently. During his interview with police, defendant acknowledged that he threw punches at the victim while the victim was on top of defendant, but defendant never explained the nature of his conduct that caused the victim's eye injury.[1] Indeed, as the majority recounts

_____

[1] I note that, during his interview with police, defendant initially lied to police about the location of the altercation with the victim and his role in the physical contact with the victim.

in explaining the facts of this case, the victim's eye injury occurred when defendant was no longer on top of the victim, and that conduct was not addressed in defendant's interview with police. And certainly, during his interview, defendant never said he did not attempt to gouge the victim's eye or that he did not "specifically aim[ ]" for the victim's eye.

Put differently, although there are some inconsistencies in the record regarding the altercation, there are no inconsistencies regarding what caused the victim's serious physical injury; the only evidence in the record regarding the specific cause of the victim's serious physical injury was the victim's testimony to the jury.

Additionally, because the majority emphasizes that the victim's glasses were "not even knocked off * * * until the end of the fight," I note that, prior to defendant gouging the victim's eye, the victim's glasses had been knocked off of the victim's head when defendant's girlfriend hit the victim with a "pipe or a beer bottle," fracturing the victim's skull and causing him to momentarily lose consciousness. That is, the victim's glasses were not an impediment to defendant engaging in the conduct that the victim testified caused his injury.

The majority also posits that a reasonable factfinder could have concluded that it was the victim's "particular vulnerability," not the force used by defendant, that caused serious physical injury to the victim. In my view, the notion that a reasonable factfinder could have concluded that defendant did not use enough force to have been negligent as to the risk of serious physical injury to the victim's eye as a result of gouging it is belied by both (1) photos in the record showing substantial dark purple bruising around the victim's eye after defendant's assault and (2) the circumstances of the assault itself. On the latter point, I note that no party disputed the intensity of the physical altercation between defendant and the victim.

Consequently, unlike the majority, I would affirm in both Case No. 20CR36598 and Case No. 20CR16011.