# STATE OF OREGON,
*Respondent,*

*v.*

# DANIEL RAY HUTCHISON,
*Appellant.*

## (9411-37439; CA A89176)

920 P2d 1105

Lawrence Matasar argued the cause for appellant. With him on the brief was Hoffman & Matasar.

Janie Burcart, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Defendant appeals his conviction for sodomy in the first degree. ORS 163.405(1). We reverse and remand for a new trial.

At trial, the state presented one witness, defendant's girlfriend, who testified that she saw defendant's penis in the mouth of her two-year-old daughter when defendant was in the shower with the child, supposedly washing the child's hair. Following instructions, the jury deliberated for about two hours, beginning at 3:05 p.m. The next morning, the jury resumed deliberations and, after about an hour and 45 minutes, it sent the trial court a note which stated:

> "The jury is divided. We have moved one vote to 8-4 with little likelihood of moving 2 more to find guilty. At what point will we be declared a hung jury?"

About 45 minutes later, over defendant's objection, the trial court read the jury the uniform jury instruction on deadlocked juries.[1] The jury resumed deliberations and in less than 15 minutes, it returned a verdict of guilty by a vote of 11-1. Defendant assigns error to the instruction, arguing that, when considered in the circumstances of this case, the instruction coerced the jury, in violation of his due process rights.

In *State v. Marsh*, 260 Or 416, 490 P2d 491 (1971), the Supreme Court reviewed case law and treatises on the giving of deadlocked jury instructions.[2] The factual context

---

[1] The court gave Uniform Criminal Jury Instruction No. 1023 which provides:

"It is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide the merits of the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, or to change your opinion, if you are convinced that it is erroneous. But do not surrender your own honest belief as to the weight of the evidence solely because of the opinion of your fellow jurors or merely for the purpose of returning a verdict."

[2] A deadlocked jury instruction is known as an "Allen" charge. The name comes from *Allen v. United States*, 164 US 492, 17 S Ct 154, 41 L Ed 528 (1896), in which the Supreme Court approved such an instruction.

and form of the instruction may result in jury coercion in violation of a defendant's rights to a fair trial and to due process. *Id*. at 438-39. The court set out several factors considered by courts in deciding whether such an instruction was coercive: the relative weight of the evidence; the trial judge's knowledge of the jury's vote; and the timing of the instruction and verdict.

■■     A trial court has the discretion to give a deadlocked jury instruction. *Marsh*, 260 at 443. However, we review as a question of law whether the instructions resulted in jury coercion.

Defendant relies mainly on the second *Marsh* factor—the trial court's knowledge of the jury's vote—in arguing that the instruction here was coercive. He urges us to adopt a rule in which it would be reversible error whenever a trial judge gives a deadlocked jury instruction after the judge has been informed of a jury vote that is leaning towards conviction. *See Brasfield v. United States*, 272 US 448, 47 S Ct 135, 71 L Ed 345 (1926) (trial judge may not inquire into numerical division of jury, even if judge does not ask how many jurors are for conviction). The state argues that such a rule would invalidate a useful instruction and

> "misses the point: it is the instruction itself, and not the judge's knowledge of the vote, that is the allegedly coercive element, so whether or not he or she knows that the majority are leaning towards conviction does not make the minority for acquittal any more or less a minority. As long as the instruction does not *refer* to a majority and a minority, and does not put pressure upon the minority to change its vote in order to reach a consensus, requesting that the jury continue does not constitute coercion to convict." (Emphasis state's.)

■     We decline defendant's invitation to adopt an absolute rule. The Oregon Supreme Court has admonished that the endless variations of deadlocked jury instructions,[3] as well as the factual circumstances, make it difficult, if not impossible for courts to uniformly administer the giving of

---

[3] Although the court in *Marsh* disapproved the instruction given in that case, it approved the draft instruction by the American Bar Association, which is the basis of the instruction cited in note 1.

such instructions. *Marsh*, 260 Or at 441. However, we also reject the state's focus on only the language of the instruction. We do not dispute that, read in isolation, the instruction here was neutral; it did not refer to either a majority or minority position for conviction. However, whether the instruction was coercive depends largely upon the factual context in which the charge is given. *Id*. at 425. The setting in which the instruction was given here compromised the instruction's neutrality.

In *Marsh*, before reading a first deadlocked jury instruction, the judge told the jury that the jury's note indicated " 'that your number stands six for one side and six for the other.' " *Id*. at 420. The Supreme Court commented that that vote showed that "there was no 'minority' to be 'coerced' by the first supplemental instruction in this case." *Id*. at 437. Here, in contrast, the vote was 8 to 4. There was a minority to be coerced.

Immediately before giving the instruction, the trial court read the jury's note into the record:

"Ladies and gentlemen, I have your message that you gave us at 10:45 this morning. And I might explain [why a different deputy district attorney is present in the court].

"And at 10:45 you sent out a message and I'll simply read it so that it will be in the record.

" 'The jury is divided. We have moved one vote to eight to four with likelihood of moving two more to find guilty. At what point will we be declared a hung jury?'

"I'm going to ask you to deliberate a while longer. At the time you wrote the note, and of course it's now 45 minutes later, but at that time you had deliberated a total of about three hours and 45 minutes. Considering the seriousness of the case and the length of time that it took to present it I don't think that's an extremely long time.

"I'm going to give you an additional instruction which might be of some help to you."

The deadlocked jury instruction followed those remarks. However, by reading the note, it was clear to the jury that the court knew that the jurors were leaning toward conviction. By then instructing the jury to continue when the

judge knew that the jurors were favoring conviction, the jurors could reasonably understand that the court thought a conviction was possible. Additionally, the note that the jury gave to the court stated that the jury had "moved one vote to eight to four with *little* likelihood of moving two more to find guilty." (Emphasis supplied.) However, the court misread the note, telling the jury that it had "moved one vote to eight to four with likelihood of moving two more to find guilty." That misreading might well have strengthened any impression by the jury that the court was implicitly encouraging a vote for conviction. In short, the factual setting turned the "neutral" instruction into one from which the minority could have been coerced into acquiescing in a vote for conviction.

The third *Marsh* factor, the length of time the jury remained deadlocked after the instruction, supports that coercion occurred. Here, the jury deliberated for, at most, an additional 15 minutes. The state argues that the jury may well have deliberated for the 45 minutes between giving the note to the trial court and the giving of the instruction. Although that speculation may be valid, nonetheless, that interval is not part of the determination of the coercive effect of the instruction. It is the time after the giving of the instruction that may indicate that the jury was improperly coerced by the charge into returning a verdict without proper and further deliberations. *Marsh*, 260 Or at 429.

In *Marsh*, the court concluded that, although a trial court has discretion to give a deadlocked jury instruction, doing so involves many " 'pitfalls.' " 260 Or at 442. We conclude that the juror's note here was such a pitfall and that the instruction considered in its factual setting indicates that the jury was improperly coerced. The case must be remanded for a new trial. *Id.* at 433.

Reversed and remanded for new trial.