GARRETT, P.J.
*862 Defendant appeals a judgment of conviction for assaulting a public safety officer. We write to address defendant's first and second assignments of error, and reject her third assignment without discussion. In her first assignment, defendant contends that the trial court erred in issuing a supplemental jury instruction after the jury disclosed during deliberations that it was divided. In her second assignment, defendant challenges the trial court's denial of her motion for a mistrial after the supplemental instruction was issued. We affirm.
Defendant was an inmate at Coffee Creek Correctional Facility. While she was under "suicide watch," she engaged in an altercation with a corrections officer that resulted in an injury to the officer's hand. She was charged with assaulting a public safety officer, ORS 163.208.[1]
After closing arguments, the trial court instructed the jury, in part:
"Do not allow anything I've said or done during the course of this trial to suggest that I have formed any opinion about this case.
"* * * * *
*166 "*** [D]o not tell anyone, including me, how many of you are voting not guilty or guilty until you have reached a lawful verdict or have been discharged."
The jury began deliberations around 11:30 a.m., and, at some point, took a lunch break for an unknown amount of time. Sometime before 4:00 p.m.,[2] the court received the following note from the jury:
*863 "Your Honor,
"The jury is in a situation where each of us have a strong opinion regarding the second element of the charge (knowledge) beyond a reasonable doubt.
"We agree the actions prior to the struggle were with knowledge and intent. We also agree that she knowingly engaged in a physical struggle.
"We disagree with the fact that she had knowledge that a specific application of force was causing the officer's injury.
"We have 8 jurors in favor of guilt and four in favor of acquittal.
"Could you please provide guidance on our next steps?"
Shortly after 4:00 p.m., the court delivered the following supplemental instruction:
"Please recall that the instructions on Page 2 inform you not to inform anyone, including me, of how you are voting until you have reached a verdict or have been discharged.
"On that basis, I urge you to review all the instructions and remember to view the instructions as a whole. I'm not able to provide further direction. Please continue your deliberation, having considered the instructions.
"And it being a little after 4:00 [p.m.], I-I am informed that my staff will check in on-on the jury before 5:00 p.m. if you have not communicated further."
Defendant objected to the supplemental instruction and moved for a mistrial. The trial court denied the motion. At 5:30 p.m., the jury returned with a unanimous verdict finding defendant guilty.
On appeal, defendant first assigns error to the issuance of the supplemental jury instruction, contending that the additional instruction to a "deadlocked" jury was coercive in violation of her constitutional rights to a fair trial. Defendant separately assigns error to the denial of her motion for a mistrial under two theories: first, that the court's supplemental instruction was coercive, and second, that the jury demonstrated that it was unable to follow the court's instructions when it improperly revealed its voting *864 posture to the court. See State v. Arreola , 250 Or. App. 496, 501-03, 281 P.3d 634, rev. den. , 353 Or. 103, 295 P.3d 50 (2012) (defendant was denied a fair trial because the case presented an overwhelming probability that the jury failed to follow instructions).
We review for legal error whether a supplemental instruction[3] resulted in jury coercion and violated a defendant's constitutional rights to a fair trial and due process. State v. Hutchison , 142 Or. App. 56, 59, 920 P.2d 1105, rev. den. , 324 Or. 395, 927 P.2d 600 (1996). If we conclude that defendant's rights were violated, then we must reverse and remand for a new trial. Id. at 61, 920 P.2d 1105. Defendant's appeal of the denial of her motion for a mistrial is reviewed for abuse of discretion. State v. Smith , 310 Or. 1, 24, 791 P.2d 836 (1990).
As a general matter, trial courts have discretion as to whether, and how, to issue *167 supplemental instructions after deliberations have begun. State v. Marsh , 260 Or. 416, 443, 490 P.2d 491 (1971), cert. den. , 406 US 974, 92 S.Ct. 2420, 32 L.Ed.2d 674 (1972). Defendant's first assignment of error concerns what is known as a "deadlocked" jury instruction.[4] The "central idea" behind deadlocked jury instructions is to encourage jurors to reach agreement by reminding them of their duty to decide the case and also by encouraging them to remain open to other jurors' opinions without abandoning their own conscientiously held opinions for the sake of reaching a verdict. See id. at 423, 490 P.2d 491. In Marsh , the Supreme Court observed that even "balanced" deadlocked jury instructions (expressly directed at neither the majority nor minority voting factions of a jury) carry "a substantial potential for coercion" because such instructions risk influencing jurors in the minority to *865 abandon their conscientiously held opinions and vote with the majority for the sake of reaching a verdict. Id. at 441-44, 490 P.2d 491. We consider both the form of the instruction and the factual context to determine whether the instruction was coercive. See id. at 425-29, 490 P.2d 491.
With respect to the wording of the instruction, the probability of coercion increases when the instruction: (1) encourages the minority of the jury to reconsider its views in light of the majority's position; (2) is not balanced by an emphasis on adhering to conscientiously held opinions; (3) refers to the necessity or expense of a retrial; and, most of all, (4) informs the jury that it has an obligation to continue deliberating until it reaches a verdict or that the court will not declare a mistrial as the result of a deadlocked jury. See id. at 425-27, 490 P.2d 491.
With respect to the factual context in which the instruction is given, we may consider: (1) the relative weight of the evidence,[5] (2) the jury's knowledge that the trial court was aware of the numerical split and which way the jury was leaning when the court gave the instruction,[6] and (3) the amount of time that the jury deliberated before and after the instruction was issued. See id. at 428-29, 490 P.2d 491.
In this case, the trial court's supplemental instruction did not include the kind of language that Marsh considered to be coercive. The court did not implore the jury to reach a verdict, did not encourage any jurors to reconsider their positions, and said nothing about avoiding the time and expense of retrial. See id. at 435-37, 490 P.2d 491 ("The reference to a retrial if the jury did not reach a verdict was improper ***. Also improper was the statement that 'it is incumbent upon *866 you to reach a verdict,' * * *."); compare Hutchison , 142 Or. App. at 61, 920 P.2d 1105 (instruction encouraged jurors to reconsider views and "deliberate with a view toward reaching an agreement if you can do so without violence to your individual judgment") and Schlimgen v. May Trucking Co. , 178 Or. App. 397, 408, 37 P.3d 1005 (2001), rev'd on other grounds , 335 Or. 143, 61 P.3d 923 (2003) (coercive instruction encouraged jurors to reconsider their own views, and also implored jurors that a verdict must be reached to avoid cost and expense of retrial). Defendant points out that the instruction failed to expressly remind jurors to adhere to their own conscientiously held opinions; while true, we do not regard that omission as *168 particularly troubling in light of the noncoercive nature of the instruction's content. The court merely told jurors to "review all the instructions and remember to view the instructions as a whole" and then to "[p]lease continue your deliberation, having considered the instructions"-a directive that is, by its terms, innocuous. Cf. State v. Claridy , 29 Or. App. 435, 439-40, 563 P.2d 1239 (1977) (no coercion where trial court simply requested, in effect, that the jury "continue its deliberations until it was convinced 'it would be pointless to go on' ").
We also examine the factual context surrounding the instruction. The amount of time that the jury spent deliberating after the supplemental instruction was issued suggests that the jury was not coerced. The jury spent nearly an hour and a half in additional deliberations after receiving the court's supplemental instruction. That is a significant percentage of the jury's total deliberation,[7] which cuts against an inference that jurors suddenly felt coerced into changing their votes. Cf. Hutchison , 142 Or. App. at 61, 920 P.2d 1105 (coercion apparent where jury spent less than 15 minutes deliberating after the court's supplemental instruction, and had been deliberating for about three hours and 45 minutes beforehand); Schlimgen , 178 Or. App. at 409-10, 37 P.3d 1005 (coercion apparent where jury spent less than an hour deliberating *867 after receiving the court's supplemental instruction, and had been deliberating for a total of nearly two full days beforehand).
Defendant argues that the jurors would have felt coerced by the fact that the court was aware of the jury's voting posture when the court gave the supplemental instruction. See Hutchison , 142 Or. App. at 60-61, 920 P.2d 1105 ("By then instructing the jury to continue when the judge knew that the jurors were favoring conviction, the jurors could reasonably understand that the court thought a conviction was possible."). As a general matter, a trial court's issuance of a supplemental instruction after being informed of the jury's voting posture-if that awareness by the court is itself known by the jury-can have a coercive tendency. We conclude, however, that that single circumstance is not dispositive here, where none of the other circumstances support the same conclusion.[8] Moreover, the court here expressly reminded the jury that the court was not interested in knowing the jury's voting posture and directed the jury to review the original jury instructions, which included, "Do not allow anything I've said or done during the course of this trial to suggest that I have formed any opinion about this case." For all of those reasons, we conclude that the trial court's supplemental instruction was not coercive.
We also reject defendant's argument that the trial court should have declared a mistrial because the jury demonstrated an inability to follow instructions. See Smith , 310 Or. at 26, 791 P.2d 836 ("[J]urors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so."). It is true that the jury disclosed its voting posture despite the admonition not to do so. Nevertheless, the jury's error in that regard after several hours of deliberations does not tend to show that the *868 jury was confused about any substantive issue in the case. On this record, we conclude that defendant has not shown an "overwhelming probability" that the jury could not follow instructions such that defendant was *169 denied a fair trial. The trial court accordingly did not abuse its discretion in denying defendant's motion for a mistrial.
Affirmed.

ORS 163.208 provides, in relevant part:
"(1) A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a *** corrections officer, *** and while the other person is acting in the course of official duty."

The record does not disclose the exact time that the court received the note, or whether the jury continued deliberating after delivering it. Enough time apparently passed for counsel and the court to do legal research, for the court to consult with another judge, for the state's attorney to contact the Appellate Division of the Department of Justice, for the court to craft a new jury instruction and review it with counsel, and for the court to deliver a supplemental instruction shortly after 4:00 p.m.

The concurring opinion would conclude that the additional instruction in this case did not rise to the level of a "supplemental" instruction for purposes of our case law. Although we believe that that view has some merit, it presents an arguably close question that we need not resolve in this case, given our conclusion that, even assuming that the trial court gave such a supplemental instruction, it was not coercive. In the remainder of this opinion, we use the phrase "supplemental instruction" for ease of reference without deciding the issue raised by the concurrence.

The state argues that the jurors' note does not establish that the jury was deadlocked in the first place. We need not address that issue, however, because, as we explain below, the court's instruction was not coercive even if we assume that the jury was deadlocked.

The Marsh court noted that authorities disagreed as to the relevance of this factor. Marsh , 260 Or. at 428, 428 n. 21, 490 P.2d 491 ; see also Note, On Instructing Deadlocked Juries , 78 Yale L.J. 100, 142 (1968). One reason to disregard this factor is that the existence of the deadlock itself suggests that the evidence is not "overwhelming."

The Marsh court observed that there was a "distinct split of authority" on whether this factor was relevant, and "good reason to support the contrary contention that the knowledge by the trial judge of such facts is irrelevant in considering the possible coercive effect of such a supplemental instruction upon the minority of the jury." Marsh , 260 Or. at 429, 429 n. 25, 490 P.2d 491 ; see also Note, Due Process, Judicial Economy and the Hung Jury: A Re-examination of the Allen Charge , 53 Va. L. Rev. 123, 131 (1967).

As noted, we cannot determine from the record exactly how long the jury deliberated before sending its note to the judge. At most, that initial phase of deliberation lasted four hours and 40 minutes, but it could have been significantly shorter depending on unknown variables like how long the jury spent eating lunch and how much time elapsed between the delivery of the jury's note and the delivery of the court's supplemental instruction.

Defendant appears to take the position that whenever a trial court knows about the jury's voting posture, the court is-or, at least, should be-required to remind jurors not to abandon conscientiously held opinions and that a hung jury is acceptable. We reject such a per se rule because it is inconsistent with Marsh 's advisement that, "because of the 'endless variations' of such instructions, as well as in such factual circumstances, that it is difficult, if not impossible, for the courts to uniformly administer the giving of such instructions," and that, accordingly, no single component of deadlocked jury instructions should be "regarded as 'graven in stone.' " Marsh , 260 Or. at 441-44, 490 P.2d 491.