Argued and submitted February 2, affirmed September 13, 2023, petition for review denied February 15, 2024 (372 Or 63)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYAN A. SELL,
aka Bryan Alan Sell,
*Defendant-Appellant.*

Coos County Circuit Court
21CR06842; A176091

536 P3d 1019

Defendant appeals convictions for assaulting a police officer, resisting arrest, and interfering with a police officer. Defendant argues that the trial court abused its discretion by denying his motion for a mistrial based on seven notes sent by the jury during deliberations. Defendant also contends that the trial court erred by failing to instruct the jury regarding a culpable mental state for material elements of two of the crimes charged. *Held*: The trial court did not abuse its discretion by declining to declare a mistrial. The notes did not establish that the jurors could not be impartial, and, based on the amount of time that the jury had spent deliberating, it was appropriate for the trial court to encourage the jury to continue its deliberations. With respect to the failure to instruct the jury regarding a culpable mental state, the state committed plain error, but the Court of Appeals declined to exercise its discretion to correct one of the errors, and the other error was harmless.

Affirmed.

Andrew E. Combs, Judge.

Meredith Allen, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Defendant appeals his convictions for assaulting a public safety officer, ORS 163.208 (Count 1),[1] resisting arrest, ORS 162.315 (Count 2), and interfering with a peace officer, ORS 162.247 (Count 3). During their deliberations over the course of a few hours, the jurors sent the trial court a total of seven notes reflecting their frustrations with each other and asking questions. In his first assignment of error, defendant argues that the trial court abused its discretion by denying his motion for a mistrial based on the notes. However, absent a clear indication that the jurors could no longer be impartial, the trial court did not abuse its discretion in refusing to declare a mistrial after only three hours of deliberations. As a result, we reject defendant's first assignment of error. In his other assignments, defendant argues that the trial court erred by failing to instruct the jury regarding a culpable mental state for material elements of the crimes charged in Counts 1 and 2. Although the trial court committed plain error, we decline to exercise our discretion to correct the error in the instruction on Count 1, and the error in the instruction on Count 2 was harmless. We therefore affirm.

## I.   FACTS

As noted, defendant assigns error to the jury instructions and to the trial court's decision not to declare a mistrial during deliberations. As such, we begin by discussing the underlying facts as they relate to the culpable mental state of defendant, and we will then turn to the interactions between the court and jury during deliberations.

On February 6, 2021, police officers for the City of Coos Bay responded to a reported violation of a restraining order. The officers had three affidavits of probable cause to arrest defendant for prior violations. When the officers located defendant, he "took off running." Officer Rule chased defendant on foot, while Officer O'Connor got ahead of defendant in a patrol car. Rule yelled at defendant to stop, but he failed to do so.

---

[1] ORS 163.208 was amended since the conduct at issue here. *See* Or Laws 2021, ch 489, § 12 (effective Jan 1, 2022). Those amendments do not affect our analysis, and we refer to the current version of the statute.

When the officers confronted defendant, he had his right hand concealed in his jacket, and the officers were worried that he had a weapon. Rule and O'Connor simultaneously deployed their tasers, but the tasers were not effective because defendant was wearing thick clothing. O'Connor deployed pepper spray, after which defendant lay on the ground.

Defendant concealed his arms under his torso and refused orders to put his arms behind his back. O'Connor had to use force to move defendant's hands, while Rule kept pressure on defendant to prevent him from standing up or running away. Eventually, O'Connor managed to place defendant in handcuffs. Because defendant had been tasered and pepper sprayed, the officers called for a medical evaluation. Officer Myers arrived at the scene around the same time that this was occurring.

When paramedics examined defendant, he complained of back pain, so the officers decided to take defendant to the hospital before transporting him to jail. As defendant was being escorted to a patrol car by Myers and O'Connor, defendant began to pull away from the officers, and he screamed at them. He threatened to spit on the officers. Defendant refused to sit down in the back of the car. He was "extremely resistant to getting in the vehicle." While officers were attempting to place him inside, he managed to stand up on the seat of the vehicle, and he yelled to his wife that he loved her.

The officers pulled defendant to the ground "and got into another altercation with him." Defendant was "thrashing, and kicking, and rolling, and screaming at" the officers. O'Connor focused on getting defendant's feet secured, and he kept his body weight on defendant "to keep him from kicking at us any further." It took all three officers to hold defendant on the ground and get him under control. When defendant was secured in the patrol car, he continued "thrashing around." Defendant was "bashing his head into the Plexiglas and trying to kick out the windows."

After defendant was secured, Rule told O'Connor that O'Connor's head was bleeding. O'Connor did not have

the injury before he struggled with defendant. O'Connor had a contusion across the right side of his face above his right eye. The medics cleaned his wound and applied antibiotic ointment. O'Connor had a headache for the rest of the day, he could not sleep on his face, the wound stung in the shower, and he could not wear a patrol hat. No one saw defendant land a kick or punch on O'Connor.

Defendant was charged with assaulting a public safety officer, ORS 163.208; resisting arrest, ORS 162.315; and interfering with a peace officer, ORS 162.247. At his jury trial, the jury heard testimony from the three officers and viewed exhibits, including body camera footage of the incident. The jury instruction on assault provided that the state was required to prove that defendant "acted with an awareness that his conduct was assaultive and would likely cause physical injury." The jury instruction on resisting arrest stated in part that "a person commits the crime of resisting arrest if the person intentionally resists a person known by him to be a peace officer in making an arrest." The instructions also stated: "Guilty verdicts must be unanimous, which means that each and every juror must agree on a guilty verdict. But not-guilty verdicts may be nonunanimous."

That brings us to the deliberations. At around 3:00 p.m., after the jury had been deliberating for an hour, a juror sent a handwritten note to the trial court. It stated: "So we are stuck on one count. We are 50% - 50% on one, and unanimous on the other two. Do we have to get 10 for not guilty or 100% guilty or stay here?" The trial court proposed responding to the note by stating that "not guilty verdicts do not have to be unanimous." The prosecutor agreed. The trial court suggested telling the jury to continue deliberating but indicated that it was not otherwise inclined to respond further. Defense counsel proposed instructing the jury "that it's got to be 12 for a guilty verdict, ten for a not guilty verdict, and continue deliberating," and he did not think that there was "a hung jury." Defense counsel observed that the jury had been deliberating for only about an hour, and that it was "appropriate to encourage them to continue," but that he might conclude otherwise if "it keeps going through multiple rounds."

The trial court was aware of the option of giving a dynamite instruction,[2] but it did not want to push the jury "too hard." Thus, the trial judge responded to the jury by instructing them to continue deliberating. More specifically, at 3:10 p.m., the trial court responded to the jury by stating, in writing:

"Dear Jury:

"Guilty verdicts must be unanimous, which means that each and every juror must agree on a guilty verdict. Not-guilty verdicts do not have to be unanimous. As such, for a not guilty verdict, at least 10 jurors must agree on a not-guilty verdict. If you are divided nine to three, for example, you do not have a not-guilty verdict. If you are divided six to six, you do not have a verdict.

"Furthermore, do not tell anyone, including me, how many of you are voting not guilty or guilty until you have reached a lawful verdict or have been discharged.

"Please continue deliberating."

Later, a juror sent a second note. It stated,

"It is not my fault that the rest of the jury cannot decide. Since this is a one day case, I am only allowed to miss one shift, which was last night so that I'd be able to be here this morning. I have to get up for work in 4.5 hours. I will lose my job if I miss another day. This is taking way too long."

Without reconvening the parties, at 3:40 p.m., the trial court told the jury to "[c]ontinue deliberating."

Two more notes followed. The third one asked, "If we can't reach an agreement o[n] count 1 but we do on count 2 [and] 3[,] do we have mistrial on <u>all</u> or just the one count?" (Underscoring in original.) Five minutes later, there was a fourth note. It stated,

"(1)  Did [defendant] act [with] an awareness that his conduct was assaultive. Yes/No

"(2)  [H]is conduct would cause physical injury[.] Yes/No

---

[2] A dynamite instruction is designed to "blast loose" a deadlocked jury. *State v. Marsh*, 260 Or 416, 419, 490 P2d 491 (1971), *cert den*, 406 US 974 (1972).

"(3)    [H]is [a]ssaultive conduct in fact caused O'Connor's physical injury. Yes/No

"Are these the 3 questions for assault? That need to be answered. Having difficulty with [question] that he actually caused injury[.]"

The trial court commented to defense counsel and the prosecutor that the jury appeared to be "all tied up" on the first count. At 4:02 p.m., the trial court responded,

"Dear Jury:

"I urge you to review all of the instructions and remember to view the instructions as a whole. Please continue deliberating. You may continue deliberating tonight or you may come back in the morning to continue deliberating."

At around 4:45 p.m., the trial court received two more notes. The fifth note said:

"Your Honor,

"We are having difficulty because of the couple (married) refusal to accept compromise (and reason to believe bias). Myself and others are <u>extremely</u> frustrated.

"Because of the frustration they've caused, I don't know if I can give a[n] absolute decision. We either need to replace these jurors, or please remove me from the panel because my infuriation may affect my decision.

"Thanks for your consideration.

"[Signed]"

(Underscoring in original.) The sixth note asked, "May we adjourn and [r]eturn in the morning. Thank you."

After reading the notes, the trial court was reluctant to release the jurors because "I don't think that we are [going to] have 12 of them come back here tomorrow." The trial court proposed instructing the jury to continue deliberating until 6:00 p.m., and, after that, they would come back in the morning. As explained by the trial court, "Maybe that will push the parties to realize that they're [going to] have to be sitting in a room together, at least until six o'clock

tonight. And so maybe if some of them hate each other so much, maybe they can reach an agreement, I suppose."

The prosecutor agreed with the proposal. Defense counsel was more concerned, especially regarding the fifth note, which indicated that there were two jurors who were "refusing to accept compromise," that the other 10 may be pressuring them, and defense counsel was also concerned about the person who wrote the note. Based on that fifth note, defense counsel moved for a mistrial.

The trial court was unwilling to declare a mistrial after only three hours of deliberations. Instead, the trial court sent another note to the jury at 4:56 p.m. It stated:

> "Dear Jury:

> "Continue deliberating. We will adjourn for the day at 6:00 p.m. unless you have reached a verdict before then. In the event you do not reach a verdict this evening, each of you will need to return tomorrow at 9:00 a.m. to continue deliberating."

Defense counsel did not object "to the phrasing of the note."

Later, there was a seventh note. It stated, "Did the officer testify as to the amount of pain? Or if it resulted in his [in]ability to function? Did that officer work the rest of the day[?]" The trial court responded by sending the jury a note at 5:36 p.m. It stated:

> "Dear Jury:

> "As I stated earlier:

> "'At the end of the trial, you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult. I urge you to pay close attention to the testimony as it is given. If at any time, you cannot hear a question or answer, let me know immediately by raising your hand.'

> "Continue deliberating. Do no leave or stop deliberating until I formally release you."

Shortly thereafter, the jury returned a verdict, finding defendant guilty on all three counts. After confirming that the verdicts were unanimous, the trial court released the jury. Defendant appeals.

## II.   ANALYSIS

### A.   *Defendant's Motion for a Mistrial*

We review the denial of a motion for a mistrial for abuse of discretion. *State v. Garrett*, 292 Or App 860, 864, 426 P3d 164, *rev den*, 363 Or 744 (2018). Abuse of discretion is a "daunting standard of review that gives the trial court's decision great deference." *State v. Woodall*, 259 Or App 67, 74, 313 P3d 298 (2013), *rev den*, 354 Or 735 (2014). An abuse of discretion occurs "only when the court's ruling is not one of several legally correct outcomes." *Id.* (internal quotation marks omitted).

In reviewing the trial court's ruling on a motion for a mistrial, we consider whether "a defendant's ability to obtain a fair trial has been impaired." *State v. Arreola*, 250 Or App 496, 500, 281 P3d 634, *rev den*, 353 Or 103 (2012) (internal quotation marks omitted). A fair trial is one in which "the verdict is based on the evidence and not on factors external to the proof at trial." *State v. Osorno*, 264 Or App 742, 748, 333 P3d 1163 (2014) (internal quotation marks omitted). When a defendant claims that the jury could not follow instructions, the defendant must show an "overwhelming probability" that the jury failed to do so. *Garrett*, 292 Or App at 868 (internal quotation marks omitted).

Defendant argues that the notes from the jury "reflected both an overwhelming probability that jurors were unable to follow the court's instructions and the coercion of the minority jurors' conscientiously held opinions." Defendant moved for a mistrial after the fifth note, in which a juror expressed frustration regarding a married couple, whom the juror viewed as biased and as refusing to accept compromise. The juror also indicated that her infuriation may affect her own decision.

However, by that time, the jury had been deliberating for less than three hours. Declaring a mistrial is "a drastic remedy to be avoided if possible." *Woodall*, 259 Or App at 75 (internal quotation marks omitted). Instead of doing so, the trial court told the jury to continue deliberating, but that the court would adjourn at 6:00 p.m. and the jury would have to return the following day if it had not reached

a verdict by then. As explained more fully below, we cannot conclude that the jurors could no longer be impartial, and, given that the jury had been deliberating for only three hours, we cannot say that the trial court abused its discretion when it decided not to declare a mistrial. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) ("If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, the trial court did not abuse its discretion.").

Defendant claims that he did not receive a fair trial because the jury was unable to follow the court's instructions. Admittedly, the jury was instructed not to "tell anyone, including me, how many of you are voting not guilty or guilty until you have reached a lawful verdict or have been discharged." Despite that instruction, the first note indicated that the jury was evenly divided on one count, the third note stated that the jury could not "reach an agreement" on the first count, and the fifth note suggested that a married couple on the jury was refusing "to accept compromise" and causing other jurors to be "<u>extremely</u> frustrated." (Underscoring in original.) Although those notes are troubling, they did not mandate declaring a mistrial. *See Garrett*, 292 Or App at 867-68 (finding no abuse of discretion in denial of defendant's motion for mistrial despite the jury's disclosure of its voting posture).

Instead, the record could be read to indicate that the jury was committed to its task and took its role seriously. For example, the fourth note, which concerned the elements of the crime of assaulting a public safety officer, shows that the jury grappled with the question of whether the state proved those elements beyond a reasonable doubt. As explained below, what it means to show that a defendant "acted with an awareness that his conduct was assaultive and would likely cause physical injury" is not straightforward, and that issue has prompted recent changes in the law. *See State v. Owen*, 369 Or 288, 322, 505 P3d 953 (2022) (holding that in a prosecution for second-degree assault, the state, at a minimum, must prove that a defendant was criminally negligent with respect to the injury element of the crime); *see also State v. McKinney/Shiffer*, 369 Or 325,

333-34, 505 P3d 946 (2022) (applying *Owen*). That the jury had a difficult time working through that question shows that it *was* performing its role, despite frustration regarding the length of the process and some tension among the jurors. The record does not show that there was an "overwhelming probability" that the jury was unable to follow the instructions regarding the charges.

Defendant argues that the fifth note indicates that "a minority of jurors were being coerced to change their conscientiously held opinions, especially in light of the earlier note expressing impatience with the process and the fear of losing employment if deliberations continued." Defendant contends that some of the jurors may have pressured others, including the married couple, to change their vote.

Evidently, the jurors had differing initial opinions about whether the evidence satisfied the elements of the crime of assault, and, although some jurors expressed frustration, we might expect a conscientious jury to have difficulty with whether the state met its burden of proof, especially in a case like this one, in which no one testified that they observed defendant landing a kick or a punch on O'Connor. Although it is unusual for a jury to send seven notes to the trial court, the jury's expressions of frustration regarding its deliberations about a complex issue do not establish that the verdict was based on factors external to the proof at trial, or that defendant was otherwise denied his right to a fair trial. In addition, based on her expressions of frustration alone, we cannot conclude that the juror who penned the fifth note decided the case based on factors external to the law and the facts. *See Pachl v. Zenon*, 145 Or App 350, 360 n 1, 929 P2d 1088 (1996), *rev den*, 325 Or 621 (1997) ("A fair trial occurs when the verdict is based on the evidence and not on factors external to the proof at trial.").

Finally, it is not clear whether defendant preserved a challenge to the trial court's supplemental notes given in response to juror questions, but, assuming without deciding that he did, we determine that the supplemental notes were not coercive. The trial court did not implore or pressure the jury to reach a verdict, it did not encourage any jurors to reconsider their positions, and the trial court said nothing

about avoiding the time and expense of a retrial. *Cf. State v. Marsh*, 260 Or 416, 436-37, 490 P2d 491 (1971), *cert den*, 406 US 974 (1972) ("The reference to a retrial if the jury did not reach a verdict was improper \*\*\*. Also improper was the statement that 'it is incumbent upon you to reach a verdict' \*\*\*."). Instead, the supplemental notes simply told the jurors to continue deliberating, to consider the instructions as a whole, and that they might have to return the following day. *See State v. Claridy*, 29 Or App 435, 440, 563 P2d 1239 (1977) ("The simple request by the court that the jury continue its deliberations was \*\*\* neither inappropriate nor coercive."). We therefore reject defendant's first assignment of error.

B.   *The failure to instruct the jury regarding a culpable mental state for the injury element of the crime of assault of a public safety officer*

In his second assignment, defendant argues that the trial court erred when it failed to instruct the jury that the state was required to prove that defendant was at least criminally negligent with respect to the injury element of the crime of assaulting a public safety officer. This case was tried before that rule was announced in *Owen*, 369 Or at 322, and defendant did not object to the trial court's failure to properly instruct the jury. Accordingly, defendant requests plain-error review.

The state responds that there was no error, let alone plain error, because the jury was instructed that the state had to prove that defendant "knowingly caused physical injury" to O'Connor, and the jury was told that "knowingly caused physical injury," means that defendant "acted with an awareness that his conduct was assaultive and would likely cause physical injury." According to the state, that instruction "more than adequately conveyed to the jury that defendant had to have acted with, at the least, criminal negligence as to the physical injury element. Indeed, if defendant needed to *know* that his conduct would likely cause physical injury, then he must have acted with criminal negligence." (Emphasis in original.)

As we explain below, we conclude that the failure to instruct the jury regarding a culpable mental state was

a plain error, but the state's argument regarding the specific instruction provided has more weight when considering whether to exercise our discretion to correct the error. To constitute plain error, an error must be one of law, it must be obvious and not reasonably in dispute, and the error must be apparent on the record without having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). When the trial court makes a plain error, it is a matter of discretion whether we will correct it. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

Here, the jury was not instructed that defendant had to be at least criminally negligent with respect to the injury element of the crime.[3] That error was one of law, it is not reasonably in dispute after the Supreme Court's decision in *Owen*, and it appears on the face of the record. Accordingly, the trial court plainly erred. *See State v. Ulery*, 366 Or 500, 503, 464 P3d 1123 (2020) (plain-error analysis depends on "the law at the time of the appellate decision").

We turn then to whether we should correct the error. As we recently explained in *State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023), if an error is harmless, then we have no discretion and must affirm. Although harmlessness is often a difficult analysis, it is especially difficult when considering instructional errors regarding the mental state associated with elements of a crime because we must "assess whether the jury might have found that element to be unproved, had it been instructed on it." *Id.* at 263. In other words, "the issue is not whether a jury *could* have found defendant to have the requisite mental state on this record; rather, it is whether there is some likelihood that the jury might *not* have been persuaded that he had the requisite mental state, had it considered that issue." *State v. Stone*, 324 Or App 688, 695, 527 P3d 800 (2023) (emphases in original).

Here, like in *Horton*, 327 Or App at 263-64, we cannot conclude that the error was harmless. No one testified

---

[3] Criminal negligence "means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur ***. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10).

that they saw defendant land a kick or a punch on O'Connor, and defense counsel argued in closing that O'Connor's injury may have been involuntarily caused by defendant's metallic handcuffs while defendant was being thrown to the ground by the officers. In addition, the jury's fourth note during deliberations shows that they struggled with the elements of the crime of assault on a public safety officer, and that they were having "difficulty" determining whether defendant "actually caused injury." Based on those factors, there is at least some possibility that the jury might not have been persuaded that defendant was at least criminally negligent with respect to the injury element of the crime of assault on a public safety officer.

Next, we consider whether we should exercise our discretion to correct defendant's unpreserved error. *Horton*, 327 Or App at 264. "Even if an error does not qualify as harmless, our assessment of where it falls on the spectrum of likelihood of having affected the verdict can be an important consideration to the exercise of discretion. The likelihood that the error affected the outcome goes to its gravity and to the ends of justice." *Id.* (internal quotation marks omitted).

Here, even though there is *some* likelihood that the verdict might have been different, based on the specific instruction provided, the prosecutor's argument during closing, and the evidence presented at trial, we conclude that "it is an extremely low likelihood." *Id.* at 266. The specific jury instruction at issue in this case is somewhat unusual. It provided that the state was required to prove not only that defendant "acted with an awareness that his conduct was assaultive," but also that he was aware that his conduct "would likely cause physical injury." Furthermore, as the prosecutor put it during closing arguments, there was evidence that defendant "was so assaultive [that] it took three officers to deal with him." The jury heard testimony from the officers that defendant was "thrashing, and kicking, and rolling, and screaming at" the officers, and they also watched body camera footage of the altercation. Based on that evidence of defendant's violent conduct and based on the jury's finding that defendant was aware that his conduct would likely cause physical injury, there is an extremely low

likelihood that the jury would not have found that defendant was at least criminally negligent with respect to the injury element of the crime. Accordingly, we are not persuaded that the gravity of the error or the ends of justice warrant exercising our discretion to correct the state's plain error. We therefore affirm defendant's conviction for assaulting a public safety officer.

C.  *The failure to instruct the jury regarding a culpable mental state for the risk-of-injury element of resisting arrest*

In a supplemental assignment of error, defendant argues that the trial court erred when instructing the jury regarding the crime of resisting arrest. ORS 162.315(1) provides that "[a] person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest." The statute defines "resist" as "the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer." ORS 162.315(2)(c).

In *State v. Tow*, 321 Or App 294, 298, 515 P3d 936 (2022), we concluded that "the trial court plainly erred when it did not instruct the jury that it had to find that defendant acted with a culpable mental state with respect to 'the substantial risk of physical injury' element in ORS 162.315(2)(c)." In *Tow*, which was a case in which there was "contradicting evidence regarding whether defendant kicked and flailed his legs when the officers attempted to get him into the police car, and [in which] there was a dispute about whether or not some of defendant's movements were voluntary," we determined that the jury instruction error was not harmless. *Id.* at 298-99.

The state responds to the supplemental assignment of error by acknowledging that the trial court plainly erred under *Tow*, but the state argues that the error was harmless. Based on *Tow*, we agree with the state that the trial

court plainly erred. However, unlike in *Tow*, the error was harmless.

Here, there was evidence that defendant was so resistant that it took three officers to place him under arrest and get him into the patrol car. Unlike in *Tow*, there was no "contradicting evidence" regarding defendant's conduct; instead, the evidence shows that defendant was "thrashing, and kicking, and rolling, and screaming at" the officers. Although defendant argued in closing that O'Connor's injury may have been caused by an involuntary movement of defendant while he was being thrown to the ground by three officers, there was ample evidence that he intentionally resisted the officers by engaging in violent behavior that posed a substantial risk of physical injury. Indeed, even after the officers managed to secure defendant in the back of the patrol car, defendant continued "thrashing around," and he was "bashing his head into the Plexiglas and trying to kick out the windows."

In addition to the undisputed evidence regarding defendant's conduct, when considering Count 1, the jury found that defendant knew or was aware that his conduct "would likely cause physical injury." As a result, if the jury had been properly instructed regarding the elements of resisting arrest, then its prior finding necessarily entails that the jury would also have found that defendant was at least criminally negligent with respect to whether there was a substantial risk of physical injury. Because the error in the jury instruction regarding resisting arrest was harmless, we affirm defendant's conviction for resisting arrest.

Affirmed.