No. 258 April 1, 2026 207

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KYLE LOWELL WINN,
*Defendant-Appellant.*

Josephine County Circuit Court
18CR27120; A177067

Robert S. Bain, Judge.

Argued and submitted November 21, 2024.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Defendant appeals from a judgment of conviction for one count of felony murder, ORS 163.115 (count 1); two counts of burglary in the first degree, ORS 164.225 (counts 3 and 5); one count of assault in the second degree, ORS 163.175 (count 4); one count of criminal mischief in the first degree, ORS 164.365 (count 6); and one count of felon in possession of a firearm, ORS 166.270 (count 7).[1] Defendant asserts two assignments of error: (1) that the trial court erred in admitting evidence of his methamphetamine use prior to the incident; and (2) that the trial court erred by providing a jury instruction that omitted the culpable mental state for the "serious physical injury" element of second-degree assault. Defendant did not object to the jury instruction at trial and requests plain error review. We conclude that the trial court did not err by admitting evidence of defendant's drug use and that omitting the culpable mental state for "serious physical injury" was harmless error.

## I.  BACKGROUND

This case involves an incident that occurred inside a trailer home (hereinafter "trailer") where the victims JM and KM lived. The parties agree on the material facts leading up to defendant entering the trailer that day; their accounts of the events afterward diverge.

In April 2018, an acquaintance of defendant, Anna Fleming, drove with him to Wolf Creek, Oregon. She testified that she used methamphetamine while they were on their way, and that defendant tried to use methamphetamine with her but was unable to. She dropped defendant off, and he walked to his friend Rachel Nordstrom's property.

While defendant was visiting with Nordstrom, JM, KM, and Charles Wagoner drove up to Nordstrom's property with a truck full of firewood. JM and KM were husband and wife who lived in a trailer on Nordstrom's property. According to JM's testimony, as they drove in, defendant approached the car and said he believed that JM and KM had

---

[1] Defendant was acquitted of count 2, burglary in the first degree with the intent to commit murder, ORS 164.225, and at sentencing, count 3 was merged into count 1 and count 6 was merged into count 5.

a chainsaw in their truck that defendant believed was stolen from Nordstrom. JM testified that defendant searched the truck and did not find a chainsaw but accused JM and KM of stealing it. At that point, the parties' narratives diverge.

The state's case relied primarily on the testimony of: JM; an emergency room doctor who treated JM; several police officers; and a medical examiner. JM testified that defendant came to her trailer and told her that he wanted to search the trailer for the stolen chainsaw. JM testified that defendant pushed past her into the trailer, knocking her into the table and breaking it. JM stated that she told defendant to leave several times, and then she and defendant had a physical altercation in which JM was hit multiple times. JM recounted that soon after the altercation began, KM came over, asked what was going on, and told defendant to leave. JM testified that defendant then got into a physical altercation with KM, that she heard a sound like her husband had been injured, and that she tried to drag defendant off KM while she sent Wagoner to get Nordstrom to help. JM stated that Nordstrom was able to get defendant to leave the trailer, and after, JM found KM slumped on the floor and "his blood was everywhere." She then had Wagoner call 9-1-1. The responding officer testified that they determined that KM had died at the scene. JM was taken to the hospital and treated for a deviated septum, a broken nose, severe bruising, hairline fractures to her right maxillary sinus bone and to her left maxillary sinus bone extending back into the hard palate, and a rib fracture, which she testified were caused by defendant hitting her multiple times.

In his testimony, defendant claimed that when he entered the trailer, he squeezed past JM but did not push her. He then testified that when he was looking for the chainsaw, KM got into a physical altercation with him. Defendant claimed that he only struck JM twice while he was trying to back away from KM, and that JM came at him with swinging fists. Defendant testified that then KM started coming at him again, along with the couple's dogs, which prompted defendant to stab KM in the neck to try to get his assailants away from him.

After defendant left the trailer, he went over to the house of one of Nordstrom's neighbors, who testified that defendant, upset and covered in blood, burst into the neighbor's house and said that he'd killed KM and had beat up his wife. Police arrived shortly after, arrested defendant, and took him to the police station. An audio tape from defendant's interactions with a police detective recorded defendant saying that he had heroin and methamphetamine in his system and he made several calls from jail in which he referenced drug use. When inspecting the neighbor's house after defendant had been arrested, police found baggies and syringes which they determined belonged to defendant.

Both during and before trial, defendant opposed the admission of evidence of defendant's drug use. Before trial, the state moved to admit testimony of defendant's drug use through testimony from Fleming. The court granted the state's motion, stating that the evidence was "logically relevant to prove defendant's state of mind, which the state [was] required to prove as an element of the crimes charged and to rebut a potential claim of self-defense," and probative of defendant's motive for the crime. Then, on the eve of trial, the defense objected to the state's proposed addition to the deadly force uniform instruction, which stated, "In addition, [defendant] must also have reasonably believed the degree of force he used against [KM] was necessary under the circumstances." Defendant's objection to this special instruction grew into a general objection to any admission of evidence of defendant's drug use. The parties again argued whether any evidence of defendant's drug use should be admissible. The court denied defendant's motion, explaining that while the evidence may not be relevant for rebutting the self-defense claim after all, it still found the evidence admissible "for the whole host of reasons already articulated in [the court's] opinion letter."

At the end of the trial, the jury received an instruction for second-degree assault which did not specify that the jury must find that defendant had a culpable mental state with regards to the "serious physical injury" element. The jury convicted defendant of murder, two counts of first-degree burglary, one count of second-degree assault, one

count of first-degree criminal mischief, and one count of felon in possession of a firearm. Defendant timely appealed.

## II.   ANALYSIS

A.   *Admission of Evidence of Defendant's Drug Use*

Defendant argues that any evidence of his use, or attempted use, of methamphetamine was irrelevant and that the trial court erred by admitting it.[2] We are unpersuaded by defendant's argument. The trial court did not err when it determined that the evidence was relevant context to proving defendant's state of mind during the charged crimes.

We review the trial court's determination of relevance for legal error. *State v. Naudain*, 368 Or 140, 150, 487 P3d 32 (2021). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Thus, relevance is a "very low threshold for the admission of evidence." *Naudain*, 368 Or at 149 (internal quotation marks removed).

The trial court did not err by determining that evidence of defendant's drug use was relevant because the evidence was admitted to establish defendant's state of mind and provide context to his actions. The court explained that defendant's drug use was evidence "logically relevant to prove defendant's state of mind, which the state [was] required to prove as an element of the crimes charged." Although the court did initially note in a pretrial order that the evidence might be relevant to rebut a claim of self-defense, when defendant again objected to the evidence during trial, the court and the state agreed that the state would not use evidence of defendant's drug use for that purpose. Moreover, the court consistently identified permissible purposes, such as illustrating defendant's mental state and providing context to explain defendant's actions, that

---

[2] While defendant initially objected to the admission of jury instructions, we understand the record to have developed into another discussion about the overall admissibility of the evidence of drug use, which would logically preclude the use of any instructions about such use if it were not admitted. We understand defendant to maintain that position on appeal.

the evidence was relevant to prove. In its opinion letter, which the court incorporated in its oral ruling on the state's motion regarding the jury instructions, the court addressed any potential prejudicial value the evidence may have and concluded that the probative value outweighed any potential prejudice. The court did not err in admitting the evidence of defendant's drug use.

B.  *Failure to Instruct Jury on Culpable Mental State*

Defendant argues that it was plain error for the trial court to provide a jury instruction for second-degree assault that did not include a culpable mental state regarding the "serious physical injury" element of second-degree assault. While we accept and agree with the state's concession that the omission was plain error, we also agree that the error was harmless.

Here, the jury received the following instruction defining second-degree assault:

"Oregon law provides that a person commits the crime of assault in the second degree if the person knowingly causes serious physical injury to another.

"In this case, to establish assault in the second degree, the state must prove beyond a reasonable doubt the following elements:

"(1)   The act occurred on or about April 20, 2018; and

"(2)   [defendant] knowingly caused serious physical injury to [HM]."

The court further instructed the jury on the meaning of the term "knowingly" in the context of second-degree assault:

"A person acts 'knowingly' or 'with knowledge' if that person acts with an awareness that his or her conduct is of a particular nature or a particular circumstance exists.

"When used in the phrase 'cause serious physical injury,' 'knowingly' or 'with knowledge' means that the person acts with an awareness that (i) his conduct is assaultive; or (ii) his conduct will result in serious physical injury."

It was plain error for the jury instruction to permit the jury to find defendant guilty without requiring it

to find that defendant was at least criminally negligent with respect to the injury caused by his conduct. *See State v. Owen*, 369 Or 288, 290, 505 P3d 953 (2022) (establishing that failure to instruct the jury on the applicable mental state was error).

"Determining that an error is not harmless is necessary for reversal, regardless of whether the error was preserved or unpreserved." *State v. Ortiz*, 372 Or 658, 671, 554 P3d 796 (2024). An error is harmless if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, the relevant inquiry "is whether there is some likelihood that the jury might *not* have been persuaded that [the defendant] had the requisite mental state, had it considered that issue." *State v. Stone*, 324 Or App 688, 695, 527 P3d 800 (2023) (emphasis in original).

Here, there is little chance that a jury would not have been persuaded that defendant acted with at least criminal negligence with regards to whether his conduct would cause serious physical injury. Both JM's and defendant's accounts of their physical altercation included defendant striking JM in the face more than once and defendant and JM taking swings at each other. The record contains evidence of multiple hairline fractures on JM's skull and injuries consistent with her being shoved into a table. There is little chance a jury would not have found that defendant at least should have known that his conduct of repeatedly punching JM in the face risked causing serious physical injury. Further, the jury was not required to consider the conduct underlying the assault charge in isolation. In finding defendant guilty of first-degree burglary with the intent to assault, the jury necessarily found that defendant entered the trailer with the conscious objective to cause injury to another. In light of that finding of intentional conduct, there is little likelihood that a jury would weigh the evidence, disbelieve defendant's self-defense claim, convict him of felony murder, first-degree burglary, and second-degree assault, but not find defendant at least criminally negligent as to the possibility of causing serious physical injury by striking JM multiple times in the face.

## III.   CONCLUSION

We conclude that the trial court did not err by admitting evidence of defendant's use or attempted use of methamphetamine. Additionally, we conclude that it was plain error for the trial court to provide a jury instruction for second-degree assault that did not instruct the jury on the required culpable mental state for the "serious physical injury" element, but that the error was harmless.

Affirmed.